JOSE RINCON, Plaintiff-Appellant, *v.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 76-1172

Opinion filed July 6, 1978.

Sneider & Troy, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Mary Denise Cahill, and Kathleen Ransford, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Jose Rincon appeals from a judgment of the circuit court of Cook County entered in an action under the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) The judgment affirmed a decision of the License Appeal Commission of the City of Chicago which sustained the revocation of plaintiff's liquor license by the local liquor control commissioner.

On appeal, Rincon contends: (1) that article VII, section 8 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 153) creates an unconstitutional classification by providing different procedures based on population for reviewing revocation orders of local liquor control commissioners; (2) that the local liquor control commissioner lost jurisdiction because he failed to render his decision within the five-day period prescribed by article VII, section 5 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 149); and (3) that the commissioner's decision was contrary to the manifest weight of the evidence.

We affirm the trial court.

On March 9, 1973, proceedings were commenced before the local liquor control commissioner of the City of Chicago to revoke the retail liquor license of plaintiff, Jose Rincon. While several charges were filed against Rincon, the local liquor control commissioner found him guilty of three:

> 1. That on October 7, 1972, the licensee, JOSE RINCON, by and through his agent, ROBERT TITWELL, during an altercation on the licensed premises, committed an aggravated battery upon GUADALUPE DIAZ, a patron of said premises, contrary to Chap. 38, §12—4, Ill. Rev. Stat., 1971, the Municipal Code of Chicago and Rules of the Illinois Liquor Control Commission.
>
> 7. That on January 8, 1973, the licensee, JOSE RINCON, was in possession of an unregistered weapon on the licensed premises, to wit: a .38 caliber handgun, serial #D477899, contrary to Chap. 11.1, §11.1—7 of the Municipal Code of Chicago and Rules of the Illinois Liquor Control Commission.
>
> 8. That on February 24, 1973, the licensee, JOSE RINCON, by and through his agent, JUAN FLORES, a guard, knowingly committed a battery upon MANUEL SALAZER, a patron on the licensed premises, contrary to Chap. 38, §12—3(a), (1), Ill. Rev. Stat., 1971,

Ordinances of the City of Chicago and Rules of the Illinois Liquor Control Commission.

The pertinent facts in regard to each charge are as follows:

### Charge No. 1

Two Chicago police officers testified that at 2 a.m. on October 27, 1972, they responded to a call that a man had been shot in Lucy's Lounge, Rincon's liquor establishment. When they entered the lounge they saw Guadalupe Diaz lying on the floor shot in the chest. Robert Titwell, wearing a blue security guard's uniform, walked up to the police officers, handed them a revolver and stated "I shot a man, here's my gun."

At the police station, Titwell told an investigator that he was employed as a security guard at Lucy's Lounge. He explained that two women requested he stop Diaz from annoying them. When Titwell asked Diaz to desist, Diaz hit Titwell in the face. A struggle ensued and Diaz was knocked down. When Diaz got to his feet Titwell shot him.

Rincon testified that he paid a security service company, Protective Patrol, to furnish him with security guards for his lounge. The guards carried weapons while on duty and wore blue uniforms similar to those worn by the Chicago police.

### Charge No. 7

Two Chicago police officers testified that at 4:10 a.m. on January 8, 1973, they were hailed from the street by someone in the doorway of Lucy's Lounge. When the officers entered they saw seven to 10 people, one of whom was Jose Rincon. The officers informed the people they had to leave because it was past the 4 a.m. closing time. Rincon refused. Unaware that Rincon was the licensee of the premises, the officers again asked him to leave. When Rincon again refused, he was placed under arrest for disorderly conduct and searched. The search uncovered a .38 caliber revolver. When Rincon was unable to produce a city registration number he was charged with failure to register a deadly weapon.

Rincon testified that he purchased the revolver on December 25, 1972, and sent in his license application to the City Collector on December 26. On January 15, 1973, a week after his arrest, Rincon received a letter from the City Collector informing him that his application was not processed because it was incorrectly filled out.

### Charge No. 8

On February 24, 1973, at 3:30 a.m. the Chicago police received a complaint from Juan Manuel Salazer that he had been beaten in an unprovoked attack in Lucy's Lounge. Two police investigators responded to the call and found Salazer in a restaurant bleeding from the head.

Salazer explained that he had gone to Lucy's Lounge to have a beer. When he walked towards a woman to ask her to dance, a man identified as Juan Flores stepped in his path. Flores was wearing a blue uniform, had a badge on his shirt which read "Special Police," and was carrying an exposed .38 caliber revolver on his hip.

Salazer testified that Flores asked him "do you want something from me?" Salazer responded "I don't even know you." Flores retorted "No, I think you want something from me." Salazer put his beer down and Flores drew his gun. Another guard persuaded Flores to holster the gun. Flores pulled his billy club and attacked Salazer, twice striking Salazer on the head. After being thrown out of the lounge, Salazer walked three or four doors down to a restaurant and called police.

On March 10, a police investigator went to Lucy's Lounge and talked to a man behind the bar named Epipano Urbina Acosta. Acosta identified himself as a manager and bartender of the lounge.

Rincon testified that Acosta worked for him at times as a bartender and was paid for his services. Acosta told the investigator he had bartended the night Salazer was beaten. He admitted that Flores had attacked Salazer with his club but maintained that Salazer had provoked the attack by directing derogatory comments at Flores.

The hearings before the liquor control commissioner concluded on May 29, 1973, and the commissioner issued his order revoking plaintiff's liquor license on August 17, finding that charges 1, 7 and 8 had been sustained.

Rincon appealed to the License Appeal Commission pursuant to article VII, section 8 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 153). Rincon's request for a hearing *de novo* was denied. After reviewing the record and hearing oral argument, the Commission affirmed the decision of the liquor control commissioner. Rincon filed a complaint in the circuit court of Cook County for administrative review. The circuit court affirmed the decision of the License Appeal Commission and this appeal followed.

OPINION

I

Rincon's initial contention is that article VII, section 8 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 153) creates an unconstitutional classification based on population. Section 8 of article VII provides that appeals from all orders of local liquor control commissioners in home rule municipalities[1] of under 500,000, shall be determined on a trial *de novo*

---

[1] Article VII, section 6(a) of the 1970 Illinois Constitution entrusts home rule authority to any municipality having a population in excess of 25,000. All other municipalities are permitted to become home rule units by referendum.

before the State Commission, unless the municipality adopts a resolution requiring that such review be on the record; appeals from local commission revocation orders in municipalities of 500,000 or more are to be determined by the License Appeal Commission on review of the official record of proceedings before the local commissioner.

Rincon contends that by allowing inhabitants of municipalities of under 500,000 *de novo* review of liquor license revocation orders and denying that same relief to inhabitants of municipalities of 500,000 and over, the Act creates an arbitrary and discriminatory legislative classification in violation of article IV, section 13 of the Illinois Constitution.[2] We disagree.

■■ It is competent for the legislature to determine upon what basis a distinction may be made for the purpose of statutory classification. The prohibition against special and local legislation does not prohibit classification nor does it mean a statute must affect everyone or every locality in the same way. It means that "a law shall operate uniformly throughout the State in all localities and on all persons *in like circumstances and conditions.* [Citations.]" (Emphasis added.) *People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 217, 251 N.E.2d 175, 179.

A legislative classification based on population is valid if there is a reasonable basis for it. (*People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 251 N.E.2d 175; *Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136, 233 N.E.2d 549.) Only if it can be said, when considering the objectives of the statute, that a classification is clearly unreasonable and palpably arbitrary will a court declare the statute invalid. (*Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136, 233 N.E.2d 549; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 118 N.E.2d 295.) A classification is not arbitrary if any state of facts can reasonably be conceived that would sustain it. *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881.

Section 8 sets out procedures for reviewing decisions of local liquor control commissioners. Its objectives are (1) to ensure that local commissioners act within the cope of their authority and (2) to secure for licensees as well as for license applicants the effective administration of justice. The availability of review without undue delay is essential to the achievement of these objective.

Densely populated municipalities present problems of complexity and volume not encountered in less populated municipalities. It was not unreasonable for the legislature to conclude that despite the desirability of a hearing *de novo*, such review in municipalities of over 500,000 was

---

[2] "The General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, §13.

simply impractical and that a review limited to the record was necessary to ensure the timely and effective discharge of the License Appeal Commission's duties. The Illinois Supreme Court "has frequently held that differences in the size of the municipalities may raise special or unique problems in connection with many activities which justify classification including * * * [the] administration of justice, [citations] * * *." *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 402, 118 N.E.2d 295, 301.

■■ We take judicial notice of the fact that Chicago is the only municipality with a population over 500,000 and, therefore, the only municipality subject to the limited record review of section 8. This does not affect our decision. So long as the distinction has a reasonable basis, a classification is not invalid merely because it differentiates Chicago from other municipalities. *Alexander v. City of Chicago* (1958), 14 Ill. 2d 261, 151 N.E.2d 319; *Gaca v. City of Chicago* (1952), 411 Ill. 146, 103 N.E.2d 617; *Weksler v. Collins* (1925), 317 Ill. 132, 147 N.E. 797.

■■ In light of the objectives sought to be attained by section 8, we find that the legislature did not act unreasonably or arbitrarily in differentiating between municipalities with a population of 500,000 or more and those with less population.

## II

■■ Rincon next argues that the liquor control commissioner lost jurisdiction to revoke his license when the commissioner failed to render a decision within the five day period prescribed by article VII, section 5 of the Dramshop Act. (Ill. Rev. Stat. 1977, ch. 43, par. 149.) This precise contention has already been considered by this court and rejected. (*Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116; *Alpern v. License Appeal Com.* (1976), 38 Ill. App. 3d 565, 348 N.E.2d 271, *appeal denied* (1976), 63 Ill. 2d 555.) In *Alpern* and *Dugan's Bistro* we determined that the five day period prescribed in the statute was directory not mandatory. Those decisions are controlling.

## III

Rincon urges that the commissioner's decision is contrary to the manifest weight of the evidence. We find that the commissioner's decision was supported by substantial competent evidence. Judicial review of an administrative agency's decision must always begin with the principle that the agency's findings and conclusions are *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) Reviewing courts are not authorized to reweigh the evidence or to make an independent determination of facts, but are limited to a consideration of the record to determine whether the findings and conclusions of the commissioner are

contrary to the manifest weight of the evidence. *Nechi v. Daley* (1963), 40 Ill. App. 2d 326, 188 N.E.2d 243; *Kessell v. Illinois Liquor Control Com.* (1978), 56 Ill. App. 3d 485, 371 N.E.2d 1210.

With regard to the first charge, Rincon contends that the commissioner improperly allowed two police officers to testify to several out-of-court statements. Rincon concludes that these statements constituted inadmissible hearsay and that without these statements the commissioner's decision as to charge number one must be found to be contrary to the manifest weight of the evidence. We disagree.

■■ Initially, Rincon argues that a police investigator should not have been allowed to testify to an out-of-court statement made by Robert Titwell, whereby Titwell admitted being employed by Rincon as a security guard. Ordinarily, the admission of an alleged agent's out-of-court statements for the purpose of establishing his agency relationship with another, is error. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 596.) However, in this case there was other sufficient competent evidence to support the commissioner's determination that an agency relationship existed between Rincon and Titwell. Therefore, the admission of Titwell's out-of-court statement did not constitute reversible error. See *O'Boyle v. Greco Excavating Co.* (1972), 9 Ill. App. 3d 234, 292 N.E.2d 90; *Meyer v. Iowa Mutual Liability Insurance Co.* (1926), 240 Ill. App. 431.

■■ Rincon further contends that a police officer should not have been allowed to testify that when he entered Lucy's Lounge, Titwell stated to him "I shot a man, here's my gun." Rincon reasons that this statement does not fall within the agency admission exception to the hearsay rule. The record discloses, however, that Rincon made no objection on grounds of hearsay to the introduction of this statement into evidence. Therefore, the objection being waived, the statement was properly considered by the commissioner and given its natural probative effect. *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 89 N.E.2d 354.

Finally, Rincon claims that Titwell's out-of-court statements as to how the incident occurred, testified to by a police investigator, were improperly admitted over a hearsay objection. These statements were properly admitted against Rincon as they came within the agent's admission exception to the hearsay rule. The statements concerned a matter within the scope of Titwell's employment as a security guard (*Metzler v. Layton* (1939), 373 Ill. 88, 25 N.E.2d 60; Annot., 34 A.L.R. 2d 372, §§14, 15 (1954)) and Titwell's authority to make them may be implied from his authorized duty to preserve decorum in the lounge. Gard, Illinois Evidence Manual Rule 189, at 218 (1963); Cleary, Handbook of Illinois Evidence §17.17 (2d ed. 1963) ("This strict view which requires authority to make the statement is contrary to the present trend * * * of [simply]

admitting the statement of the agent if made concerning matters within the scope of his employment." Accord, McCormick on Evidence §267, at 639-41 (2d ed. 1972)).

■■ With regard to the seventh charge, Rincon argues that his "attempt" to comply with chapter 11.1, section 11.1—7 of the Municipal Code of Chicago precluded the commissioner from finding that he had violated that ordinance. Chapter 11.1, section 11.1—7 provides that every person who purchases a firearm from a source other than a licensed firearm dealer, must, within 10 days of his purchase, furnish the Department of Revenue with certain specified information on an approved registration form. Rincon's improperly filled out registration form which could be neither accepted nor processed can in no way be held to have fulfilled Rincon's obligation to comply with this ordinance. We refuse to read a "good faith attempt" exception into the ordinance.

Charge number eight, which the commissioner sustained, concerns an attack on a patron of Rincon's lounge by one of his security guards. The victim testified at length before the commissioner. While the victim's testimony clearly indicated the security guard was employed by Rincon, the victim did not identify the guard as Juan Flores. A police investigator testified that he had interviewed a man named Epipano Urbina Acosta at Rincon's lounge. Acosta told the investigator that he was employed by Rincon as a bartender and a manager. Also, Acosta stated he was on duty the night of the attack in question and identified the guard involved as Juan Flores. Rincon contends Acosta's out-of-court statements were inadmissible hearsay. We disagree.

■■■ Rincon admitted Acosta was employed by him as a bartender. Since the fact of agency was admitted, Acosta's out-of-court statement that Rincon employed him as a bartender and manager was admissible to show the scope of his authority. (*Faber-Musser Co. v. William E. Dee Clay Manufacturing Co.* (1920), 291 Ill. 240, 126 N.E. 186; *Mitchell v. Sherman E. McEwen Associates, Inc.* (1935), 360 Ill. 278, 196 N.E. 186.) Further, Acosta's statement identifying the security guard involved in the attack was admissible against Rincon as an agent's admission. The statement concerned a matter within the scope of Acosta's employment and his authority to make the statement can be implied from his authorized duties.

We find that the commissioner's findings and decision as to all three charges are not against the manifest weight of the evidence.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.