SOUTHEASTERN ILLINOIS ELECTRIC COOPERATIVE, INC., Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Appellees.

Fifth District   No. 5—86—0430

Opinion filed November 19, 1987.

KARNS, P.J., dissenting.

John M. Ferguson, of Belleville, Joseph R. Hale, of Shawneetown, and Robert B. Vining, Sr., of St. Louis, Missouri, for appellant.

Harris, Lambert & Wilson, of Marion, for appellee Tony Mason.

JUSTICE WELCH delivered the opinion of the court:

This is a direct appeal from an order of the Illinois Human Rights Commission affirming the finding of an administrative law judge in favor of Tony Mason and against Southeastern Illinois Electric Cooperative (SIEC) based on a finding that SIEC unlawfully discharged Mason on the basis of his race. SIEC appealed to this court.

The evidence before the administrative law judge was as follows: SIEC employed Mason for over six years on SIEC line crews. The hazards of the work required trust and cooperation among the line crew members. The terms of a collective bargaining agreement between SIEC and Local 702 of the International Brotherhood of Electrical Workers (the union) controlled assignment of work. Mason was a member of the union. Plaintiff first worked with the SIEC line crew based at SIEC's Benton headquarters, then with the line crew based at Eldorado and finally with the line crew based at Marion. The other members of the Marion line crew were Don Fisher and foreman Terry

Moore. Roy Wise was their supervisor. Wise hired Mason, and Wise had authority to fire. Moore did not. Mason was the only nonwhite employee of SIEC at all times during his employment.

Mason testified on his first day with the Marion crew he was shocked at the sight of Fisher and Moore wearing white paper hoods and carrying crosses imitative of the Ku Klux Klan. Plaintiff testified he did not complain because he was afraid of losing his job. According to Mason, Fisher kiddingly mentioned the matter to Wise the next time Wise was present, and the crosses stayed on the premises for a "long" time. Mason testified the foreman of the Benton crew told him he was hired because the company needed a minority employee to apply for a loan, and "that's when I got my nickname as their 'million dollar nigger.'" Mason testified he did not like the nickname but no one was disciplined over it and he did not complain. According to Mason, on one occasion Wise took him aside and told him the other employees wouldn't joke with him if they did not like him. Asked whether Wise's comment made him feel better, Mason testified: "No, to me it was just covering up."

In late 1982, while Mason was recuperating from back surgery following an on-the-job injury, he began an affair with Moore's wife. Moore discovered the relationship. Moore's wife phoned Fisher, told him Moore was very upset and explained why, and warned that Moore carried a gun. Fisher relayed the message to Wise. The following day, January 25, 1983, Wise confronted Moore, who admitted his knowledge of the affair. At Wise's suggestion the three men discussed the situation in Wise's automobile. Mason described what happened there as follows: Moore, "very disturbed," said, "It's down the road for you, boy, you can no longer work here, your little secret love affair with my wife is all over." Wise said, "Let's handle this like men now, let's try to solve this." Mason admitted the affair. Wise said, "We definitely have a problem here, I see no way of you continuing to work on this crew, we have a problem that cannot be solved." There was no discussion of Mason's transferring to another crew; Mason, thinking he was fired, said he would leave. He denied using the word "quit." Moore told Wise he carried a gun and thought Mason did, too; Mason said he had no gun; Moore said he would "put the gun up." Moore said he would not work that day; Wise told him to take as many days off as he liked. Before Moore left the vehicle, the three agreed to tell the rest of the men Mason's previous back injury made him unable to work and that Mason thought it best to leave.

Mason testified that while he was with the Marion crew he saw one SIEC serviceman with a woman not his wife on more than one

occasion on company time. According to Mason, there were occasions when the serviceman said he could not perform certain services because he had to see "Red," and on one occasion when the serviceman missed a safety meeting, an employee stated in Wise's presence that the serviceman was with "Red."

Wise testified he became aware of the hood-and-cross incident "quite some time afterward" and knew employees called Mason the "million dollar nigger." According to Wise, Moore was on sick leave for about 10 days after January 25, 1983. Wise testified he once asked Mason if the "joking" bothered him, and that Mason never complained to him about racially motivated mistreatment. Wise testified he told "the other employees" in a general way that he did not like racial innuendo. Wise testified that on January 25, 1983, in his car, he did not hear Moore say, "Boy, you will have to leave, it's down the road for you." Wise testified he said, "Fellas, we have a very serious situation here, and for the safety of the crew and for everyone involved, something needs to be resolved," and Mason replied, "Well, I'll just leave and you won't have to worry about me anymore." Wise testified he then asked Mason, "Is that what you wish to do, Tony?" and Mason replied, "That's what I'll have to do."

Mason filed a charge of racial discrimination with the Illinois Department of Human Rights on June 14, 1983. On July 22 Mason filed a complaint in the Federal district court for the Southern District of Illinois against SIEC and the union.

Among the findings and conclusions of the administrative law judge in his November 22, 1985, recommended order in the instant case were the following: He believed Mason's account of what happened in Wise's vehicle rather than Wise's; Wise brought Mason and Moore together on January 25, 1983, knowing Moore had a gun; Mason "understandably" believed Wise's failure to contradict Moore's statements and Wise's subsequent statements indicated Mason was fired; either Moore or Mason had to leave the crew, and the decision it would be Mason was in some degree based on race; this conclusion was supported by the incidents of racism on the job, which Wise tolerated and did not question Mason about until long afterward; and SIEC's asserted reasons for firing Mason were pretexts: Wise discharged Mason even though Moore was more dangerous under the circumstances, indicating Wise did not discharge Mason for safety reasons; and Wise did not discharge the serviceman whom Wise had reason to know was having an extramarital affair, indicating Wise did not discharge Mason for having an affair. The judge recommended the Human Rights Commission order Mason reinstated with back pay.

The Commission affirmed the recommended order on June 9, 1986. SIEC appealed to this court.

As SIEC observes, the recommended order of the administrative law judge was not without mischaracterizations of the evidence: The judge mistakenly concluded Mason reported the hood-and-cross incident to Wise; the judge stated the affair between Moore's wife and Mason ended before Mason returned to work (the evidence was the woman became Mason's wife); there were discrepancies as to details regarding the meeting in Wise's vehicle. SIEC referred to each of these matters in its objections to the recommended order, and the decision of the Human Rights Commission affirming the recommended order implies the Commission was aware of the objections and understood the facts.

■ SIEC argues the findings by the administrative law judge were contrary to the manifest weight of the evidence. On review the findings and conclusions of an administrative agency are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Reviewing courts are not authorized to reweigh evidence or make independent determinations of facts, but are limited to considering whether the findings and conclusions of the agency are contrary to the manifest weight of the evidence. *Rincon v. License Appeal Comm'n* (1978), 62 Ill. App. 3d 600, 606-07, 378 N.E.2d 1281, 1286.

■■ Preliminarily, SIEC argues the judge should not have relied on Mason's hearsay testimony indicating Wise was aware of an affair involving another SIEC employee on company time. Out-of-court statements used not as evidence of the fact asserted but as circumstantial evidence for another purpose do not fall under the hearsay rule. (*Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 783, 382 N.E.2d 831, 834.) The testimony was admissible for the purpose of showing Wise's knowledge of the other employee's affair. (See *Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 382 N.E.2d 831.) The comments of the judge indicate he considered this evidence to show SIEC's knowledge of another affair, not that the affair occurred. This court has endorsed the view that in an administrative proceeding the distinction between hearsay and nonhearsay affects the weight the evidence carries rather than its admissibility. *City of Hurst v. Illinois Commerce Comm'n* (1983), 120 Ill. App. 3d 354, 362-63, 458 N.E.2d 568, 573-74.

■ SIEC argues the judge should not have considered this testimony because the circumstances were so dissimilar, in that the compared incident was not shown to involve sex or the wife of a co-worker. The law does not require complete coincidence of circumstances before cases may be compared to test an inference of

racial discrimination. Some difference could be shown in almost any two sets of facts. Except in extreme cases, these differences should affect the weight of the comparison upon the inference proposed and not the admissibility of the comparison. The question of how much weight the comparison deserves is for the agency, here the Commission, to determine. See *Rincon v. License Appeal Comm'n* (1978), 62 Ill. App. 3d 600, 378 N.E.2d 1281.

SIEC argues the evidence does not support the conclusion that Mason was fired. True, the testimony does not indicate Wise used the words "fired" or "terminated." Neither did Mason by anyone's account use the words "quit" or "resign." The circumstances of Mason's departure were disputed; the issue required a determination of the credibility of the witnesses; the agency resolved the issue in favor of Mason. Questions as to the credibility of witnesses are best left to those who see and hear them testify. (*McDonald v. Industrial Comm'n* (1968), 39 Ill. 2d 396, 403, 235 N.E.2d 824, 828.) That Mason did not request the shop steward's presence in the heat of the moment, met Wise to receive his final pay and did not complain to the union business agent until much later were matters for the agency to weigh but were not dispositive.

SIEC argues the Commission incorrectly applied the doctrine of collateral estoppel on the issue of whether Mason quit or was fired and should have viewed the outcome of that issue in the Federal court case as dispositive of the instant case. The appeal from the Federal judgment was not concluded until March 25, 1987. (See *Mason v. Southeastern Illinois Electric Cooperative, Inc.* (7th Cir. 1987), 815 F.2d 38.) The appeal from the Federal court judgment was not concluded as of the Commission's June 9, 1986, decision, and should not have been the basis for the Commission to apply collateral estoppel. (See *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 1375.) Since the Commission considered the doctrine but concluded it did not affect the issues before the Commission, we have no cause to disturb the Commission's decision in that regard. The decision may be sustained upon any ground warranted by the record irrespective of whether the particular reasons assigned or specific findings are correct. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n* (1953), 414 Ill. 275, 283, 111 N.E.2d 329, 334.

SIEC argued at oral argument of this cause that *Ballweg* was wrongly decided. We express no opinion upon that issue, for we are bound to follow the opinions of our supreme court. See *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 322, 377 N.E.2d 1208, 1213.

For the foregoing reasons, the order of the Human Rights Commission is affirmed.

Affirmed.

HARRISON, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:

Because I believe the doctrine of collateral estoppel applies in this instance, I would reverse the judgment of the Human Rights Commission.

The doctrine of collateral estoppel or "issue preclusion" provides that an adjudication on the merits of an issue by a court of competent jurisdiction precludes relitigation of the same issue in a subsequent action despite the fact that a different cause of action is pleaded in the subsequent action. (See *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 633, 431 N.E.2d 1096, 1097; *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 153, 421 N.E.2d 278, 282.) To be applicable, the issue decided in the prior adjudication must be identical with the one presented in the cause under review; the party against whom estoppel is asserted must have been a party or in privity with a party to the prior litigation; and there must have been a final judgment on the merits in the prior action. *Johnson*, 103 Ill. App. 3d at 633, 431 N.E.2d at 1097; *Claiborne v. Hutchinson* (1978), 67 Ill. App. 3d 374, 377, 385 N.E.2d 29, 32.

On July 22, 1983, Mason filed a complaint in the Federal district court for the Southern District of Illinois against Southeastern Illinois Electric Cooperative (SIEC) and Local 702 of the International Brotherhood of Electrical Workers (the union). Mason alleged in this complaint that he "was employed by defendant company *** until January 25, 1983, when plaintiff was unlawfully discharged by defendant." The first count claimed that the union breached its duty of fairly representing Mason in his grievance against SIEC under the Labor-Management Relations Act (29 U.S.C. §141 *et seq.* (1983)) and conspired with SIEC to permit Mason's discharge to stand. It further recited the union informed Mason the union agreed with SIEC that Mason "voluntarily resigned from his employment." In the second count, Mason alleged SIEC "unlawfully discriminated against plaintiff on the basis of race by discharging him, in breach and violation of plaintiff's rights under the collective bargaining agreement, and that defendant local union breached its duty of fair representation owing to plaintiff in the processing of the grievance filed on plaintiff's dis-

charge." SIEC denied Mason's allegations.

The Federal court submitted the case to a jury with two special interrogatories: (1) "Do you find by a preponderance of the evidence that plaintiff was discharged from his employment by [SIEC]?" (2) "Do you find by a preponderance of the evidence that plaintiff was discharged from his employment by [SIEC] without just cause?" As to the second count, the issues instruction instructed the jury to determine whether Mason was discharged by SIEC and if so whether the discharge was without just cause, and recited that SIEC and the union denied "that such discharge was without just cause because of [Mason's] race." On March 15, 1985, the Federal jury reached a verdict for Mason and answered both special interrogatories in the affirmative. Mason then filed a written motion with the Human Rights Commission pertaining to his charge of racial discrimination filed with them in 1983, contending the administrative law judge should find (1) Mason was discharged from his employment without just cause, and (2) the discharge was because of Mason's race. Mason argued SIEC was estopped to deny the truth of these propositions in light of the verdict in the Federal court. The written motion noted Mason and SIEC were represented by the same attorneys in the Federal court as in proceedings before the Commission, and stated that "the issues of ultimate fact as to whether Tony L. Mason was discharged and whether his discharge was based upon race are identical in both forums. *** [T]hese identical issues were fully tried during a two-day jury trial ***, and each party fully presented its case to its own satisfaction before it rested, and each party litigated fully both questions before the case was submitted to the finder-of-fact." SIEC in its written response did not dispute the applicability of the principles of collateral estoppel to the issues Mason contended were conclusively adjudicated but noted the Federal judgment was not final in that the Federal court had not yet ruled on certain motions filed by SIEC.

On September 17, 1985, the Federal court entered judgment notwithstanding the verdict in favor of SIEC and the union. According to its order, Mason was not discharged; he quit; Mason did not produce sufficient evidence that the discharge was without cause even assuming a discharge occurred; and there was insufficient evidence that the union breached its duty of fair representation. The United States Court of Appeals affirmed the judgment of the Federal district court on March 25, 1987. *Mason v. Southeastern Illinois Electric Cooperative, Inc.* (7th Cir. 1987), 815 F.2d 38.

The Federal litigation of the issue whether Mason quit or was fired falls within the principles of collateral estoppel. The parties and

the issues were the same. The only question was whether there was a final judgment on the merits.

By the time the administrative law judge issued its order, the Federal court had determined Mason had not been fired. Nonetheless, the majority points out that the appeal from the Federal judgment was not concluded until March of 1987, and under the holding in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 1375, collateral estoppel could not apply, for the potential for appellate review had not been exhausted. *Ballweg*, however, mistakenly relies upon *Relph v. Board of Education* (1981), 84 Ill. 2d 436, 420 N.E.2d 147, a case pertaining to *res judicata* and the law of the case, for authority to support its position pertaining to collateral estoppel. According to section 13 of the Restatement (Second) of Judgments, "final judgment" for purposes of collateral estoppel "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." (Restatement (Second) of Judgments §13, at 132 (1982).) This definition does not require all appeals to have been exhausted; merely that an adequately deliberated and firm decision has been rendered by a court of competent jurisdiction. (See Restatement (Second) of Judgments §13, comment *g* (1982).) The requirement of finality of judgment is interpreted strictly only when bar or merger under the principles of *res judicata* is at stake. (Restatement (Second) of Judgments §13, comment *g* (1982).) "This is natural when it is considered that the effect of a judgment as bar or merger is to 'extinguish' a claim, and, when there is merger, to create a new claim based on the judgment itself." (Restatement (Second) of Judgments §13, comment *g*, at 136 (1982).) Such is not the case for collateral estoppel, which merely precludes the relitigation of an issue. To hold otherwise would promote needless duplication of effort and expense. (See, *e.g., Cranwill v. Donahue* (1981), 99 Ill. App. 3d 968, 970, 426 N.E.2d 337, 339.) As Mason himself represented in his motion, the identical issues were fully tried, and each party fully presented its case and fully litigated the questions before submitting them to the finder-of-fact. For these reasons, I believe the question whether Mason quit or was fired had already been conclusively adjudicated by the Federal court by the time it reached the Human Rights Commission for decision and should not have been relitigated. I, therefore, would reverse the judgment of the Human Rights Commission on the basis of the doctrine of collateral estoppel.