JOHN STARK, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 88—0213

Opinion filed December 6, 1988.—Rehearing denied December 27, 1988.

Michael J. Polelle, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert Ruiz, Solicitor General, and Joseph M. Claps, Michelle D. Jordan, and Matthew J. Dunn, Assistant Attorneys General, of counsel), for respondent Pollution Control Board.

Richard M. Daley, State's Attorney, of Chicago (Glenn E. Carr, Joan Cherry, Glenn C. Sechen, William Motto, Philip Mitchell, and Eric Dunham, Assistant State's Attorneys, of counsel), for respondent Cook County Board of Commissioners.

Thomas R. Burney and Matthew M. Klein, both of Schain, Firsel & Burney, Ltd., of Chicago, for respondent Northwest Municipal Conference.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal from an order of the Illinois Pollution Control Board (IPCB) dismissing the petition of John Stark for review of a decision of the Cook County board which granted conditional site approval for a proposed balefill in an unincorporated area of Cook County and a conditional special use permit to the respondent Northwest Municipal Conference. The ground for dismissal ascribed by the IPCB was that it lacked jurisdiction to review actions of the Cook County board.

The only pertinent record before us is the petition for review filed before the IPCB. For the purposes of this appeal the factual allegations of the petition will be taken as true.

Alex Seith, the chairman of the Cook County Zoning Board of Appeals, conducted hearings on the application of the Northwest Municipal Conference for issuance of a special use permit for construction of a new regional pollution control facility known as the Bartlett balefill. The proposed balefill consists of 410 acres in an unincorporated area of Cook County about one mile from the Village of Bartlett.

During the hearings, Mr. Seith took the position that matters of health, safety and welfare were not the concern of the zoning board of appeals or the Cook County Board of Commissioners and prevented attorneys for the City of Elgin, the Village of South Elgin, and the Village of Bartlett from adequately and fully developing a record to show the dangers to health, safety and welfare posed by the proposed balefill. Mr. Seith specifically denied that the Cook County Zoning

Board of appeals had jurisdiction over safety considerations relating to the proposed balefill and that such considerations were within the "exclusive jurisdiction" of the Environmental Protection Agency.

The petitioner, John Stark, resides in the Village of Bartlett, Du Page County, and has been a resident of Bartlett for approximately eight years. He lives about five miles from the site of the proposed balefill "so as to be affected by its construction and operation." He personally attended all but one of the hearings held by the county zoning board of appeals and at one hearing presented objections to the proposed balefill. He also introduced, on behalf of a citizens' action group, the testimony of an assistant professor of pharmacology who testified regarding the dangers of toxic waste at the site of the proposed balefill.

On November 16, 1987, the Cook County Board of Commissioners approved the site location of the proposed balefill and granted approval of a special use permit to the defendant, Northwest Municipal Conference, which consists of a group of municipalities. The approval was based on the hearings held by the Cook County Zoning Board of Appeals.

The petition for review further contended that the approval by the Cook County board of the application for the special use permit was generally in violation of one or more of seven specific criteria expressly set forth in section 39.2(a) of the Illinois Pollution Control Act for determining the suitability of a new regional pollution control facility. The petitioner asked the IPCB either to reverse the approval of the Cook County Board of Commissioners or, alternatively, to remand the matter to the Cook County board or the Cook County Zoning Board of Appeals for further hearings and proceedings.

In its dismissal of the petition for review, the IPCB relied on section 39.2(h) of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(h)). The Act provides that no permit may be granted by the Illinois Environmental Protection Agency unless the applicant has received approval by the county board of the county where the facility is located. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(c).) Section 40.1 provides that the grant or denial of approval by the county board shall be subject to review by the IPCB. (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1.) Any appeal from the IPCB shall be made directly to the appellate court. (Ill. Rev. Stat. 1985, ch. 111½, par. 1041.) However, section 39.2(h) of the Act provides as follows (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(h)):

"Nothing in this Section shall apply to any existing or new regional pollution control facility located within an unincorpo-

rated area of any county having a population of over 3,000,000 or within the corporate limits of cities or municipalities with a population of over 1,000,000."

Only Cook County has a population over three million and only Chicago has a population over one million. Thus, all persons in the State seeking a special permit for a pollution control facility and all persons objecting to the issuance of a permit are covered by the Act except in cases involving facilities in Chicago or the unincorporated area of Cook County. The petitioner contends that the statute constitutes special legislation contrary to section 13 of article IV of the Illinois Constitution and a denial of equal protection of the law contrary to section 2 of article I.

The petitioner's claim, reduced to its essentials, is that any person aggrieved by the action of the Cook County board, either in granting or denying relief, is denied equal protection of the law in that he must seek review directly to the circuit court rather than first to the IPCB.

The respondents, County of Cook, IPCB and Northwest Municipal Conference, have advanced several arguments in support of their opposition to the petitioner's position. At the outset, we accept the petitioner's argument that the fact that Cook County and Chicago are home rule powers is not dispositive of the matter. The Act applies to home rule municipalities in Cook County other than Chicago. And we agree with the petitioner that he did not waive the constitutional question by failure to raise it before the IPCB. A party has the obligation of raising a constitutional question at the earliest fair opportunity. (*Head-On Collision Line, Inc. v. Kirk* (1976), 36 Ill. App. 3d 263, 343 N.E.2d 534.) Since the circuit court has been bypassed by the legislative enactment that permits direct appeal to this court, we are the first fair opportunity the petitioner has had to raise the constitutional question.

■■ The respondents contend that the petitioner lacks standing to bring this action. To have standing, a claimant must be a person "interested in the controversy." The supreme court in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376, 362 N.E.2d 298, 301, observed as follows:

"The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citations.] The dispute must, therefore, touch the legal relations of parties who stand at a position adverse to one another."

■■ The rule includes claims attacking the constitutionality of a

statute. In order to challenge the constitutionality of a statute, a person must be directly or materially affected by the provision, and he must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute. 11 Ill. L. & Prac. *Constitutional Law* §41 (1981); *Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 360 N.E.2d 360.

■■ The petitioner has referred to two separate sections of the Illinois Constitution which he says have been violated, the one dealing with special legislation and the other with equal protection of the law. It is recognized that, although they often overlap, they are not coextensive. (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474.) But the standards used in determining whether an enactment violates the equal protection clause are the same as those used in determining a violation of the special legislation clause. (*Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) Therefore, we judge that the standing to challenge either section is the same and that the petitioner must allege that he has sustained or is in immediate danger of sustaining a direct injury from enforcement of the statute.

The only record before us is the petition for review filed before the IPCB, and the only factual allegations that could possibly support standing here are that the petitioner is a resident of the Village of Bartlett, Du Page County, who lives about five miles from the proposed balefill. The allegation that he will "be affected by [the balefill] construction and operation" is a conclusory allegation that is based solely on the allegation that he lives five miles from the proposed balefill.

■■ The petitioner's argument is that "the stark reality is that only a resident of an unincorporated part of Cook County is deprived of the environmental procedures and standards of the act." He asks that we "strike out section 39.2 (h) either entirely or partly as applied to [him] without doing any real harm to the statute or section 39.2 in particular." But the petitioner is not a resident of the unincorporated area of Cook County (or of Chicago) and he has not alleged any "injury" to himself. His position is much like that of the plaintiffs in *Garner v. County of Du Page* (1956), 8 Ill. 2d 155, 133 N.E.2d 303. In that case the county board approved a zoning change which was challenged by persons some of whom lived three miles from the site rezoned and one who lived 1½ miles away. The supreme court affirmed the trial court's ruling against the complainants on the ground that they failed to establish standing to contest the rezoning. The court made observations pertinent here (*Garner*, 8 Ill. 2d at 159-60, 133 N.E.2d at 305):

"Apart from the total failure of any evidence showing that the rezoning would depreciate the values of appellants' real estate, we may also consider the fact that appellants' properties are so far distant from the rezoned tract as to make it doubtful that any prejudice or depreciation could result, [citation] and the further fact that two of the properties are not even within the unincorporated area to which the zoning amendment applies. [Citation.] *** From the tenor of the allegations and the substance of the proof it appears only that if the rezoning does pose a threat of injury to appellants, it will not be different from that of the public generally. To use the words of *Blumenberg v. Hill*, 119 N.Y.S. 2d 855, 'As one may not assume the role of champion of a community to challenge public officers to meet him in courts of justice to defend their official acts, *** so one having only a general interest may not adopt the part of an advocate of municipal welfare *** to promote a judicial enforcement or interpretation of zoning regulations.' "

The petitioner has referred us to another case in which the IPCB overruled an applicant's argument that a certain objector who lived between five and six miles from the proposed facility lacked standing. Apart from the absence of binding precedential impact of a decision of the IPCB, there is in that case an overriding fact that was the basis of the IPCB's ruling. The applicant had claimed that there was a need for the proposed facility for communities within a 10-mile radius from the facility. The IPCB held that the objector had standing to contest that factual allegation since he lived within the 10-mile radius.

At this point, we deem it necessary to make clear that the issue before us is not whether the petitioner has standing to contest the issuance of the permit by the Cook County board. The narrow issue before us, rather, is whether the petitioner has standing to claim that the procedural distinctions created by the statute are unconstitutional. In this regard, we note that the City of Elgin, the Village of South Elgin and the Village of Bartlett appeared before the Cook County board in opposition to the application of Northwest Municipal Conference and that at least some of them have filed suit in the circuit court of Cook County appealing the decision of the Cook County board. During oral argument, the attorney for the petitioner expressed some doubt that the petitioner would have standing in that lawsuit. It is difficult for us to reconcile a lack of standing in that case with standing in this case. But even so, nothing we say here should be construed as a bar to the petitioner from filing an appropriate action in an appropriate forum. If he can allege and prove standing, he should be per-

mitted the opportunity to do so.

Since we decide that the petitioner lacks standing, it is not necessary that we address the constitutional arguments raised by all parties. (*Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 243 N.E.2d 193.) However, since this issue may recur in other actions brought by residents of Chicago or the unincorporated area of Cook County, we will address the constitutional question. There are a number of cases upholding differences in procedural avenues available based on population. In *Rincon v. License Appeal Comm'n* (1978), 62 Ill. App. 3d 600, 378 N.E.2d 1281, the claim was made that a section of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 94 *et seq.*) was unconstitutional because it violated the prohibition against special laws. That section provided that appeals from the local liquor commissioner should be heard *de novo* in municipalities with populations less than 500,000 and in municipalities over 500,000 the appeal should be heard on the record before the commission. The court upheld the statute. The same claim was made against the same statute with the same result in *Maldonado v. License Appeal Comm'n* (1981), 100 Ill. App. 3d 639, 427 N.E.2d 225.

A case much in point is *Fitzpatrick v. City of Springfield* (1973), 10 Ill. App. 3d 317, 293 N.E.2d 712, which dealt with the difference in procedures available to applicants for zoning variations in municipalities of varying populations under the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—1 *et seq.*). The plaintiff filed a four-count complaint appealing the refusal of the City of Springfield to grant variations. Count I was brought under the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, par. 265 *et seq.*), and the other three sought relief by way of declaratory judgment. The plaintiff appealed from a decision of the trial court dismissing count I on the ground that administrative review was not available. Under the Municipal Code, in those municipalities over 500,000 population, variations may be granted by the zoning board only; in all others, the corporate authorities may retain the authority to grant variations. The corporate authorities of the City of Springfield retained the right to grant variations. The plaintiff argued that denying him the right to administrative review while granting it to applicants in the City of Chicago was a denial of equal protection. The appellate court, in upholding the decision of the trial court, said this (*Fitzpatrick*, 10 Ill. App. 3d at 321-22, 293 N.E.2d at 715-16):

> "It flies into the face of reality to say that on the question of variations and special uses, the time required and the problems presented in the City of Chicago is [*sic*] time-wise, number-wise

and otherwise *no different from those that exist in smaller communities.* There is therefore a sound basis for making the decision of a Zoning Board of Appeals final and subject to administrative review in the City of Chicago and to permit downstate cities to determine for themselves whether the action of the Zoning Board of Appeals is final and appealable under the Administrative Review Act or whether it is only a recommendation to the City Council. \*\*\* *In addition, the Declaratory Judgment Act provides for judicial review and thus there is no denial either of equal protection of the law or of due process. The plaintiff will have his day in court under the three counts remaining in the circuit court* and the judgment of the trial court in denying administrative review on count I should be and it is hereby affirmed." (Emphasis added.)

Similarly, it flies into the face of reality to say that congestion-wise and pollution-wise, the problems of Chicago and Cook County are no different from those that exist in other cities and counties. And there is nothing to prevent the petitioner from seeking relief under the declaratory judgment act.

■ In addition, at the time of the enactment of the statute, both the City of Chicago and Cook County had judicial approval of their right to regulate the location of sanitary landfills. (*City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 322 N.E.2d 11; *County of Cook v. John Sexton Contractors* (1979), 75 Ill. 2d 494, 389 N.E.2d 553.) The *Sexton* court's discussion of other cases reveals the serious problem confronting the courts, and consequently the legislature, in dealing with the powers of municipalities over regulation of environmental matters. Environmental protection is a monumental problem with which the legislature has been struggling for a relatively short period of time. It is fair to infer that, when the legislature enacted section 39.2, it considered the holdings of *Sexton* and *City of Chicago* as well as the fact that Cook County and Chicago had in place regulations and administrative departments for their enforcement and that they had environmental problems far greater than less populated cities and counties.

It may be that experience will disclose the necessity for extending the exemptions of section 39.2 to other municipalities and counties, but that decision should be left to the wisdom and discretion of the legislature, which has been charged with the responsibility of effecting a "unified, state-wide program for pollution control." Its decision to omit other municipalities and other counties from a procedural, not a substantive, exemption should not be gainsaid in the absence of any

showing of prejudice. The observations of the supreme court in *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 421-22, 367 N.E.2d 1325, 1328-29, are appropriate here:

"The equal protection clauses of the State and Federal constitutions do not prohibit the legislature from pursuing a reform 'one step at a time,' or from applying a remedy to one selected phase of a field while neglecting the others. [Citations.] As the United States Supreme Court has stated, 'a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attached.' " 67 Ill. 2d at 421-22, 367 N.E.2d at 1328-29, quoting *McDonald v. Board of Fire Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409.

We find that the petitioner failed to overcome the statute's presumption of validity, that the statute has a rational underpinning and meets the requirements of *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 489 N.E.2d 1385, cited by the petitioner.

For these reasons, the order of the IPCB dismissing the plaintiff's petition for review is affirmed.

Order affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.