66 F.3d 438
 DOCTOR'S ASSOCIATES, INC., Plaintiff-Appellee,
v.
Emily DISTAJO, Renato Distajo, Constantino Lamando, Milo
Lamando, Jose Alberto Brenes, Alvaro Guerrero, Maria T.
Guerrero, Wesam S. Youmaran, Linda Youmaran, Julie Shino,
Johnson Shino, Albert Yonan, Leylah Yonan, Louis Loenneke,
Mary Ann Bookout, Michael Johnson, Deborah A. Kane, Gregory
F. Kane, Bruno Gianinni, Ronald Rothmund, Patricia Rothmund,
John S. Papaleo, John A. McCrary, John Gillon, Sonya Smith,
Paul Riise, Melissa Riise, and Rhonda Benton, Defendants-Appellants.
DOCTOR'S ASSOCIATES, INC., Plaintiff-Appellee,
v.
Raymond BICKEL and Sandra Bickel, Defendants-Appellants.
 Dockets 94-9207, 94-9293, 94-9209, and 95-7183.
 United States Court of Appeals,
Second Circuit.
 Argued June 7, 1995.
Decided Sept. 12, 1995.
As Amended Sept. 28, 1995.
 
 David M. Duree, Reinert, Duree & Crane, St. Louis, MO, for defendants-appellants Emily Distajo, Renato Distajo, Constantino Lamando, Milo Lamando, Jose Brenes, Alvaro Guerrero, Maria Guerrero, Wesam Youmaran, Linda Youmaran, Julie Shino, Johnson Shino, Albert Yonan, Leylah Yonan, Louis Loenneke, Mary Ann Bookout, Michael Johnson, Deborah A. Kane, Gregory F. Kane, Bruno Gianinni, Ronald Rothmund, Patricia Rothmund, John S. Papaleo, Raymond Bickel and Sandra Bickel.
 Edward E. Angwin, Birmingham, AL, for defendants-appellants John A. McCrary, John Gillon, Sonya Smith, Paul Riise, Melissa Riise and Rhonda Benton.
 Nicholas Wocl, Tooher, Puzzuoli & Wocl, Stamford, CT, for all defendants-appellants.
 Edward Wood Dunham, Wiggin & Dana, New Haven, CT, for plaintiff-appellee.
 Before: MINER, LEVAL and CABRANES, Circuit Judges.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 This case is about forum-shopping, by one and all. Doctor's Associates, Inc. ("DAI") is the national franchisor of Subway sandwich shops. DAI and its franchisees entered into standard franchise agreements, which required them to arbitrate all contractual disputes in Bridgeport, Connecticut, under Connecticut law. When problems did arise, however, neither side invoked the arbitration clause. First, DAI directed its wholly owned real-estate leasing companies to bring summary eviction proceedings against the franchisees in local state courts.[1] The franchisees, in turn, scrambled to obtain judgments against DAI in local state courts.
 
 
 2
 When DAI found itself faced with state court claims around the country, it sought shelter in the arbitration clause of its franchise agreements. Accordingly, it petitioned the federal district court in Connecticut to compel arbitration under the Federal Arbitration Act. Before the district court could act, some of the franchisees won state court judgments against DAI. But DAI eventually convinced the district court to enjoin the franchisees from pursuing their state actions--even from enforcing judgments already entered--and to send the parties to Bridgeport to resolve their disputes around the arbitral table.
 
 
 3
 On appeal, we are presented with several questions relating to the Federal Arbitration Act: (1) whether a district court has subject matter jurisdiction over a petition to compel arbitration where there is complete diversity among all the parties to the arbitration agreement (all of whom are joined as parties in the petition), but where other, nondiverse parties have been joined as defendants in a parallel state action involving the same underlying dispute; (2) whether the district court should have accorded preclusive effect to various state court judgments entered in Alabama, Illinois, and North Carolina courts; (3) whether an arbitration clause is void for "lack of mutuality" under Connecticut law if it requires only one party to submit disputes to arbitration; (4) whether a party to an arbitration agreement waives its right to compel arbitration when it litigates substantial issues through an alter ego; and (5) whether a district court or an arbitrator should decide whether a party was fraudulently induced to assent to an arbitration agreement.
 
 
 4
 The district court found complete diversity, refused to accord preclusive effect to the state court judgments, found that the arbitration clause did not lack mutuality, held that DAI had not waived its right to arbitrate regardless of whether its leasing affiliates, which brought the court proceedings, were its alter egos, and left the question of fraudulent inducement to the arbitrators. As discussed below, we affirm in part and reverse in part.
 
 I. FACTS
 
 5
 Doctor's Associates, Inc. ("DAI"), a Florida corporation, is the national franchisor of "Subway" sandwich shops. DAI entered into identical franchise agreements with each of the defendant franchisees (the "Franchisees").[2] Each agreement contains an identical arbitration clause, which provides that any claim arising out of or relating to the franchise agreement must be arbitrated in Bridgeport, Connecticut, under the Commercial Arbitration Rules of the American Arbitration Association. According to the arbitration clause, no party may take legal action against the other in connection with the franchise agreement without first attempting to arbitrate the dispute.[3]
 
 
 6
 DAI requires each franchisee to sublease its premises from one of several real-estate leasing companies that are wholly owned by DAI. Each sublease contains a "cross-default" provision, whereby any breach of the franchise agreement by the franchisee constitutes a breach of the sublease.[4] According to the deposition testimony of one of its own officers, DAI wanted its leasing affiliate to be the franchisees' sublessor to obtain greater leverage over them in the event of a dispute.
 
 
 7
 A. The District Court Proceedings in Doctor's Associates, Inc. v. Distajo (Nos. 94-9207, 94-9209, 94-9293)
 
 
 8
 From 1991 through 1993, various disputes arose between DAI and the several franchisees. DAI never filed any demands for arbitration, despite its claims that the franchisees had breached the franchise agreements. Instead, DAI directed its leasing companies to invoke the cross-default provisions of the subleases, and to institute eviction proceedings in state courts against each franchisee.
 
 
 9
 In response to these eviction proceedings, each of the franchisees filed a state court action claiming, inter alia, fraud and breach of contract by DAI, its leasing companies, and several of DAI's officers and agents.
 
 
 10
 According to the franchisees, DAI uses this subleasing arrangement to circumvent the arbitration clause in the franchise agreements. They argue that the leasing companies are mere shells, or alter egos, of DAI. It is undisputed that the leasing companies are wholly owned by DAI, that they have no assets or net income, and that DAI decides when the leasing companies will file eviction proceedings. Pursuant to the sublease, the franchisee must pay rent directly to the actual landlord; no rent is paid to the leasing company. According to the franchisees, DAI has taken the position that the arbitration clause in the franchise agreement is not binding on its leasing companies, because they are not parties to that agreement. The franchisees claim also that the leasing companies have asserted the right to proceed with eviction lawsuits against the franchisees even if the franchisees file arbitration demands against DAI. Thus, DAI allegedly brought eviction lawsuits through its leasing companies to pressure its franchisees into resolving disputes, but invokes the arbitration clause to protect itself against litigation initiated by the franchisees.
 
 
 11
 DAI responded to each state lawsuit brought by the franchisees by serving a demand for arbitration pursuant to the franchise agreement. When the franchisees refused to arbitrate their disputes, DAI filed petitions to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 4, in the United States District Court for the District of Connecticut. All sixteen cases were eventually consolidated before Chief Judge Peter C. Dorsey. Before the district court ruled on DAI's petitions, the state courts in Alabama, Illinois, and North Carolina entered judgments in favor of the franchisees in Cases 1-12 and 15-16.
 
 
 12
 In the district court, DAI contended that the franchisees were bound by the franchise agreement to submit any disputes with DAI to arbitration in Bridgeport, Connecticut, before instituting judicial proceedings. The franchisees responded by seeking dismissal of DAI's petitions on several grounds, including, inter alia: (1) lack of subject matter jurisdiction, due to incomplete diversity of the parties; and (2) collateral estoppel, based on the intervening state court judgments. The district court rejected each of these contentions in a ruling dated September 29, 1994. The district court simultaneously rejected DAI's motion to enjoin the franchisees from pursuing parallel state court proceedings, on the grounds that the requested injunction did not fall within any of the narrow exceptions to the Anti-Injunction Act, 28 U.S.C. Sec. 2283.
 
 
 13
 On November 10, 1994, the district court granted DAI's petitions to compel arbitration. In doing so, the court rejected several defenses raised by the franchisees, including the following: (1) that the arbitration clause was void for lack of mutuality; (2) that DAI had waived arbitration by virtue of its leasing companies' prosecution of eviction lawsuits; and (3) that DAI had fraudulently misrepresented the scope of the arbitration clause in the franchise agreement. The court held that the arbitrators, not the court, should determine whether the leasing companies were "alter egos" of DAI, and then address the question whether DAI had fraudulently misrepresented the scope of the arbitration agreement.
 
 
 14
 When the franchisees continued to pursue their state court actions, DAI obtained a temporary restraining order from the district court on November 22, 1994, preventing them from participating in the parallel state proceedings. On December 14, 1994, the district court entered a preliminary injunction, barring the Distajo franchisees from seeking enforcement of their Illinois judgment. Doctor's Assocs., Inc. v. Distajo, 870 F.Supp. 34 (D.Conn.1994). The court concluded that injunctive relief was "not inappropriate" under the Anti-Injunction Act, 28 U.S.C. Sec. 2283, because continued state litigation would "impair the integrity of the order of arbitration." In granting DAI's motion, the court rejected the franchisees' argument that an intervening judgment entered in favor of the Distajo franchisees by an Illinois state court on October 24, 1994, was "final" for res judicata purposes and would preclude entry of the injunction under the full faith and credit statute, 28 U.S.C. Sec. 1738.
 
 
 15
 All of the franchisees filed timely appeals from the district court's order of September 29, 1994, denying their motions to dismiss, and the order of November 10, 1994, compelling arbitration. All of the franchisees except those from Alabama (Cases 8-12) also appeal from the court's December 9, 1994, order entering the preliminary injunction.
 
 
 16
 B. The District Court Proceedings in Doctor's Associates, Inc. v. Bickel (No. 95-7183)
 
 
 17
 The proceedings in the Bickel case differ somewhat from those cases consolidated under the Distajo rubric. On December 16, 1994, the Bickels filed a complaint in Illinois state court against DAI, its leasing company, its development agent, and three DAI officers. DAI responded by filing a petition to compel arbitration in the United States District Court for the District of Connecticut on January 20, 1995, and moved to enjoin the Bickels from prosecuting their state court action. On February 7, 1995, the Illinois court entered a default judgment against DAI. On February 13, 1995, Chief Judge Dorsey granted both DAI's petition to compel arbitration and its motion for a preliminary injunction, while permitting DAI to move the Illinois court to vacate the default judgment on the basis of defective service of process. The district court entered a written order embodying the Bickel injunction on May 9, 1995, but did not order DAI to post a bond.
 
 
 18
 The Bickels appeal from the court's order of May 9, 1995, granting DAI's petition to compel arbitration and entering the preliminary injunction.
 
 II. DISCUSSION
 
 19
 "When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo." In re Vogel Van & Storage, Inc., 59 F.3d 9, 11 (2d Cir.1995). We also review de novo the district court's decision to compel arbitration. Collins & Aikman Prods. Co. v. Building Systems, Inc., 58 F.3d 16, 19 (2d Cir.1995).
 
 A. Subject Matter Jurisdiction
 
 20
 Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. Secs. 1-16, confers jurisdiction on district courts to hear petitions to enforce arbitration agreements, but only to the extent that the court would otherwise have jurisdiction over the dispute. The statute provides as follows:
 
 
 21
 A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.
 
 
 22
 9 U.S.C. Sec. 4 (emphasis added). As the Supreme Court has explained,
 
 
 23
 [t]he Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. Sec. 1331 (1976 ed., Supp. V) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.
 
 
 24
 Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 941 n. 32, 74 L.Ed.2d 765 (1983).
 
 
 25
 The parties seem to agree that the only possible basis for federal subject matter jurisdiction in this case would be diversity of citizenship. 28 U.S.C. Sec. 1332. It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show "complete diversity"--that is, that it does not share citizenship with any defendant. C.T. Carden v. Arkoma Assocs., 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806), overruled on other grounds, 43 U.S. (2 How.) 497, 555, 11 L.Ed. 353 (1844); Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 84 (2d Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991). DAI is a Florida corporation with its principal place of business in Florida. The franchisees are residents of Alabama, Illinois, Massachusetts, North Carolina, and Pennsylvania.
 
 
 26
 The franchisees argue that there is not complete diversity of citizenship here. According to the franchisees, the "controvers[ies] between the parties" to which the FAA refers involve not only DAI, but also DAI's development agents--some of whom share the same citizenship with certain franchisees. None of those agents was a party to the franchise agreement; none has been joined as a party in the present proceeding. These local DAI agents, the franchisees contend, are "indispensable parties" to the present federal action, as evidenced by the fact that the affiliates are named defendants in the franchisees' state actions. In other words, the franchisees argue that their state court actions are the "suit[s] arising out of the controversy between the parties" hypothesized by the FAA. If so, then the citizenship of all the parties in the state actions determines whether there is complete diversity in the federal action to compel arbitration. Because these agents cannot be joined without destroying diversity, the franchisees argue that the district court should have dismissed the petitions to compel.
 
 
 27
 DAI responds that the "suit arising out of the controversy between the parties" is DAI's action to compel arbitration--not the parallel state action--and that DAI's affiliates are not "indispensable parties" to the federal action. Accordingly, DAI argues that we should look at the citizenship only of the parties named in the petition to compel, when determining whether there is diversity jurisdiction. Prudential-Bache Sec., Inc. v. Fitch, 966 F.2d 981, 988 (5th Cir.1992) ("jurisdiction for a petition to compel arbitration [must] be determined from the face of the petition"). DAI offers a textual argument and a policy argument to support its position. First, it notes that the FAA asks whether the district court would have jurisdiction over a suit arising out of a controversy "between the parties." The phrase "the parties" most sensibly refers to those persons who are parties to the arbitration agreement--and who therefore can be named in the petition to compel arbitration. Second, DAI argues that the FAA would be fatally undermined if "the parties" described in Sec. 4 could be expanded to include persons who had not signed the arbitration clause but who allegedly were involved in the "underlying controversy." If such a rule were adopted, a party resisting arbitration could defeat federal jurisdiction simply by suing someone from the same state, plus the party seeking to compel arbitration, in a separate state lawsuit. Diversity would be destroyed simply by claiming that the local defendants in the parallel action were "indispensable parties" to the petition to compel.
 
 
 28
 We agree with DAI. The "parties" to which Sec. 4 of the FAA refers are the parties to the petition to compel. As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure. Where joinder of a party would destroy subject matter jurisdiction, the court must dismiss the action if that party is "indispensable" to the litigation. Fed.R.Civ.P. 19(b)[5]; Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 548 (2d Cir.) (finding dismissal proper where indispensable party was Indian tribe that enjoyed sovereign immunity from suit), cert. denied, 502 U.S. 818, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991). But individuals who are not parties to the arbitration agreement cannot be "indispensable" parties under Rule 19(b) if they do not meet either of the threshold tests of Rule 19(a).[6] That provision only requires joinder of a party if (1) the court cannot afford "complete relief" to those already joined, in the absence of that party, and (2) the unjoined party has an interest in the litigation and his absence may either impede his ability to protect that interest or subject the already-joined parties to a risk of inconsistent obligations--which often means the risk of piecemeal litigation. Neither condition is satisfied in the present case. First, the district court can grant all the relief sought by DAI in this case--an order compelling arbitration--regardless of whether DAI's development agents (nonparties to the arbitration agreement) are present. Second, the other consideration set forth in Rule 19(a)--possible prejudice resulting from piecemeal litigation--is overcome in this context by the FAA's strong bias in favor of arbitration. Indeed, the Supreme Court has categorically stated that the FAA requires courts to enforce an arbitration agreement "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Moses H. Cone, 460 U.S. at 20, 103 S.Ct. at 939. A district court should not consider the citizenship of strangers to the arbitration contract, since they are not "parties" the suit arising out of the controversy within the meaning of the FAA.
 
 
 29
 Accordingly, we hold that the district court was correct in looking only to the citizenship of the parties in the action before it--that is, DAI and the franchisees, who signed the arbitration agreement--to determine whether there was complete diversity. Because the parties conceded at oral argument that DAI and the franchisees are completely diverse, we affirm the district court's finding that it possessed subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 and 9 U.S.C. Sec. 4.
 
 
 30
 B. Preclusive Effect of State Court Judgments
 
 
 31
 The franchisees claim that the district court should have accorded full faith and credit to the various state court judgments that found the arbitration clause unenforceable in cases involving DAI and various of the defendant franchisees.
 
 
 32
 The full faith and credit statute, 28 U.S.C. Sec. 1738, provides that "[state] judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." Accordingly, a federal court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist., 31 F.3d 89, 98 (2d Cir.1994).
 
 
 33
 The parties agree that the question, therefore, is whether the various state court judgments (one in Alabama, eight in Illinois, and one in North Carolina) would be accorded preclusive effect under Alabama, Illinois, or North Carolina law, respectively. We address each state's law in turn.
 
 1. The Alabama Judgment (Case # 8)
 
 34
 During October 1993, DAI's real-estate leasing company and its equipment leasing company filed suit against franchisee John McCrary in the Circuit Court of Talladega County, Alabama. In December 1993, McCrary filed a counterclaim against those DAI affiliates, and added DAI and its Alabama development agents as cross-claim defendants. On January 25, 1994, DAI and its affiliates filed a motion to dismiss the counterclaims and cross-claims or, in the alternative, to stay the Alabama case pending arbitration. DAI claims that it withdrew that motion after filing its petition to compel arbitration in the district court in Connecticut on March 8, 1994. On June 28, 1994, McCrary filed in the Alabama court a "Motion to Determine Non-Arbitrability of Issues."
 
 
 35
 On July 7, 1994, the Alabama Circuit Court ruled that the arbitration clause was void and unenforceable "for any of the following independent reasons": (1) lack of mutuality; (2) fraudulent inducement; (3) waiver by DAI of the right to invoke the arbitration clause; and (4) invalidity of the clause under Alabama law prohibiting all arbitration agreements, since the agreement lacked a sufficient "interstate nexus" to permit application of the FAA (which preempts state laws invalidating arbitration clauses affecting interstate commerce). The court also held that the issues raised in McCrary's counterclaim fell outside the scope of the arbitration clause. The Alabama court then expressly found "no just reason for delay" and accordingly directed that final judgment be entered in favor of McCrary.
 
 
 36
 DAI subsequently filed a motion for reconsideration, which the Alabama court denied on September 28, 1994. McCrary represents to this court that DAI subsequently appealed these orders to the Alabama Supreme Court. (The parties have been barred from proceeding with that appeal pursuant to the preliminary injunction entered by the district court on December 9, 1994.)
 
 
 37
 In an order entered September 29, 1994, denying McCrary's motion to dismiss, the district court declined to give preclusive effect to this Alabama judgment. The court reasoned that because a motion to reconsider the judgment was still pending in state court, there was not yet a final judgment on the merits. Thus, principles of res judicata and collateral estoppel would not apply.
 
 
 38
 On appeal, DAI concedes that the Alabama ruling was indeed "final" for the purposes of preclusion. Under Alabama law, an order entered upon less than all of the claims presented in an action is a final, appealable order if "the judge makes an express determination that there is no just reason for delay...." Goza v. Everett, 365 So.2d 658, 659 (Ala.1978). "Alabama courts, like federal courts, generally apply the same test of finality for purposes of preclusion as they do for appealability." Stone v. Williams, 970 F.2d 1043, 1055 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); see also First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc., 825 F.2d 1475, 1480 (11th Cir.1987) (interpreting Alabama law), cert. denied sub nom. McGregor v. First Ala. Bank of Montgomery, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988). Because the Circuit Court of Talladega County expressly found that its decision was final and that there was no reason for delay, its July 7, 1994, order was immediately appealable and thus would be accorded preclusive effect under Alabama law as of that date.
 
 
 39
 DAI urges this court nevertheless to disregard the Alabama judgment, for three reasons. First, DAI argues that the Supreme Court's decision in Allied-Bruce Terminix Cos. v. Dobson, --- U.S. ----, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), overturned the interstate commerce analysis that provided the Alabama court's fourth rationale for voiding the arbitration clause. The Supreme Court's decision, DAI contends, constitutes an "intervening change in the applicable legal context," Staten Island Rapid Transit Operating Auth. v. ICC, 718 F.2d 533, 543 (2d Cir.1983), that requires a federal court not to accord preclusive effect to the Alabama decision. See RESTATEMENT (SECOND) OF JUDGMENTS Sec. 28(2) (1980). Even if Allied-Bruce did undermine one rationale supporting the Alabama court's judgment, however, the Supreme Court's decision did not affect the alternate grounds set forth by the court for voiding the arbitration clause. Because the legal context has not shifted at all in these other areas, we cannot reexamine the Alabama judgment.
 
 
 40
 Second, DAI contends that it was not afforded a "full and fair opportunity to litigate" the arbitration claims in the Alabama court. See Milltex Indus. Corp. v. Jacquard Lace Co., 922 F.2d 164, 168 (2d Cir.1991); Stone, 970 F.2d at 1056. DAI assigns error to three aspects of the procedure followed in the Alabama court, each of which we reject: (1) DAI complains that it was not afforded the right to file a brief in response to McCrary's "Motion to Determine the Non-Arbitrability of the Issues." But as DAI conceded at oral argument before this court, nothing in the record indicates that it ever sought to file such a brief, much less that the Alabama court prevented it from filing one. Absent any evidence to the contrary, we accept the statement in the written order of the Alabama court that "[b]oth sides have thoroughly briefed the issues and provided factual evidence in support of their respective positions." (2) DAI also claims that it was not afforded "meaningful oral argument." Because DAI does not claim that oral argument was completely denied, we dismiss the argument out of hand. This court has held that "[o]ral argument is not a necessary component of due process in all circumstances." Zaluski v. INS, 37 F.3d 72, 73 (2d Cir.1994); see also FCC v. WJR, The Goodwill Station, Inc., 337 U.S. 265, 276, 69 S.Ct. 1097, 1103, 93 L.Ed. 1353 (1949) ("Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised."). Courts have broad discretion to determine how much, if any, oral argument is appropriate in a given case. We will not second-guess the Alabama court's allocation of its time. (3) Finally, DAI argues that the Alabama court drastically misapplied the law. This argument is nothing more than an invitation for this court to revisit the merits of the Alabama court's judgment--precisely what the full faith and credit statute tells us not to do. See Charles Koen & Assocs. v. City of Cairo, 909 F.2d 992, 1000 n. 8 (7th Cir.1990) ("The full faith and credit statute does not permit federal courts to reassess the merits of state court judgments."). "Lower federal courts are not superior to state courts." Lion Bonding & Sur. Co. v. Karatz, 262 U.S. 77, 90, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923); see also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."). If DAI is dissatisfied with the judgment of the Alabama trial court, it should take an appeal.
 
 
 41
 Third, DAI argues that there was no motion properly before the Alabama court that would permit it to decide the arbitrability issue. That is, DAI claims that it had already withdrawn its own motion to compel arbitration under Sec. 3 of the FAA, and that McCrary's own "Motion to Determine the Non-Arbitrability of the Issues" was unauthorized, considering that McCrary had never sought a declaratory judgment in his complaint. According to DAI, the Alabama opinion is therefore purely "advisory," and is not entitled to preclusive effect under state law. This argument fails for two reasons. First, the Alabama court clearly believed that DAI's motion to dismiss had been submitted for decision, since it denied that motion on the merits. Second, Stamps v. Jefferson County Board of Education, 642 So.2d 941, 944 (Ala.1994), which DAI cites, does not support the proposition that a declaratory judgment is merely "advisory" if such relief was not specifically requested in the complaint. All the Alabama Supreme Court stated in Stamps was that "[a]ctions or opinions are denominated 'advisory,' ... where the judgment sought would not constitute specific relief to a litigant...." 642 So.2d at 944 (quoting EDWIN M. BORCHARD, DECLARATORY JUDGMENTS 34 (1934)) (emphasis deleted). In that case, a group of teachers had sued their employer and sought a judicial declaration that their work duties subjected them to prosecution by a state agency. The court held that such a declaratory judgment would be purely advisory because the prosecutorial agency had not been joined as a party, and thus would not be bound by the decision. Id. But DAI is a party in the Alabama action, and is bound by the state court judgment. Because the declaratory judgment finding the arbitration clause to be unenforceable provides "specific relief" to McCrary against DAI, as required by Stamps, it cannot be brushed aside as an "advisory" opinion.
 
 
 42
 For these reasons, we hold that the district court should have accorded full faith and credit to the Alabama judgment. Accordingly, we reverse the district court orders denying McCrary's motion to dismiss and compelling him to pursue arbitration. On remand, we direct the district court to dismiss DAI's petition to compel McCrary to arbitrate. Although McCrary did not appeal from the December 9, 1994 order entering the preliminary injunction, we nevertheless exercise our pendent appellate jurisdiction in the interests of judicial economy to vacate the injunction. See Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991) ("[W]here we have jurisdiction to consider some questions on appeal, we may exercise our discretion to take pendent jurisdiction over related questions."), cert. denied sub nom. Lillis v. Golino, --- U.S. ----, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).
 
 
 43
 2. The Illinois Judgments (Cases 1-6, 15-16, DAI v. Bickel)
 
 
 44
 Eight groups of Illinois franchisees[7] filed complaints against DAI, its leasing companies, and DAI's two co-owners, and their cases were eventually consolidated before the Circuit Court of Madison County, Illinois. On October 24, 1994, the Illinois court granted the franchisees' motion for summary judgment, declaring the arbitration clause void and unenforceable on several grounds. The court stated that its decision was a "final and appealable order and judgment under Illinois Supreme Court Rule 304(a) in that there is no just reason for delaying either the enforcement of or the appeal from this judgment and order."
 
 
 45
 DAI represented to the district court that it had filed a motion for reconsideration in the Illinois court, and that the possibility of appeal remained open. Reasoning that a judgment subject to appeal was not final under Illinois law, the district court refused to accord preclusive effect to the Illinois court's decision. The district court relied on Pelon v. Wall, 262 Ill.App.3d 131, 135, 199 Ill.Dec. 546, 634 N.E.2d 385 (2d Dist.1994), which held that "[f]or res judicata purposes, a judgment is not final until the possibility of appellate review has been exhausted."
 
 
 46
 The Bickels also filed a complaint against DAI and others in the Circuit Court of Madison County, on December 16, 1994. DAI failed to enter an appearance in Madison County within the prescribed time, so the Illinois court entered a default judgment in favor of the Bickels on February 7, 1994. In its judgment, the Illinois court declared the arbitration clause void and unenforceable, and scheduled a hearing on damages for April 4, 1995. On February 13, 1995, however, the district court ruled that for the purposes of issue preclusion, the Illinois judgment obtained by the Bickels was no more final than the judgment obtained by the other franchisees in Madison County. Accordingly, the district court granted DAI's petition to compel arbitration and enjoined the Bickels from continuing their Illinois litigation. The injunction contained an exception, however, which permitted DAI to move the Illinois court to set aside its default judgment.
 
 
 47
 The Illinois Supreme Court has held that an Illinois judgment is not final, and thus not entitled to preclusive effect, until the time for appeal has expired. Ballweg v. City of Springfield, 114 Ill.2d 107, 113, 102 Ill.Dec. 360, 499 N.E.2d 1373 (1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."); Relph v. Board of Educ., 84 Ill.2d 436, 442, 50 Ill.Dec. 830, 420 N.E.2d 147 (1981) (holding that an appellate court's mandate to remand with instructions for further proceedings establishes the law of the case, but does not constitute a final judgment entitled to res judicata effect--partially because the trial court's further proceedings are subject to subsequent appeal, and partially because the appellate court's mandate is subject to review by the Illinois Supreme Court); see also People v. Condon, 246 Ill.App.3d 74, 76, 185 Ill.Dec. 932, 615 N.E.2d 802 (2d Dist.1993) (holding that judgment is not final for purposes of preclusion until the potential for appellate review has been exhausted).
 
 
 48
 The franchisees respond by citing Illinois Founders Insurance Co. v. Guidish, 248 Ill.App.3d 116, 120, 187 Ill.Dec. 845, 618 N.E.2d 436 (1st Dist.1993), where it was said that
 
 
 49
 [t]he pendency of an appeal has no effect on the finality of the order appealed from. Under certain circumstances, the pendency of an appeal can affect the enforceability of a judgment ... but not its finality. More to the point, a final judgment can serve as the basis to apply the doctrines of res judicata and collateral estoppel even though the judgment is being appealed.
 
 
 50
 The Illinois Appellate Court's statement in Guidish is clearly at odds with the Illinois Supreme Court's categorical statements in Ballweg and Relph. See Prymer v. Ogden, 29 F.3d 1208, 1213 n. 2 (7th Cir.) (discussing, but declining to resolve, conflict in authority), cert. denied, --- U.S. ----, 115 S.Ct. 665, 130 L.Ed.2d 599 (1994). Despite the best efforts of the franchisees to distinguish Ballweg and Relph, we must follow the rulings of the Illinois Supreme Court.[8]
 
 
 51
 We hold that the district court correctly refused to accord preclusive effect to the Illinois judgments.
 
 3. North Carolina (Case # 7)
 
 52
 In April 1993, Michael Johnson filed a complaint against DAI and several affiliated individuals in the General Court of Justice, Superior Court Division, in Gaston County, North Carolina. Johnson alleged, inter alia, fraud, breach of contract, and conversion. DAI replied by filing two motions. First, it moved to stay the lawsuit pending arbitration. Second, it moved to dismiss Johnson's complaint, on the grounds that he had waived his right to challenge the arbitration agreement by previously participating in arbitration proceedings with DAI. Johnson, in turn, claimed that the arbitration clause was unenforceable on several grounds, including (1) that it lacked mutuality and (2) that he had been fraudulently induced into executing the arbitration agreement.
 
 
 53
 On May 3, 1994, the North Carolina court denied both of DAI's motions. In its written order, the court explicitly addressed only the issues raised in DAI's motion to dismiss: it held that Johnson's "limited participation in the arbitration proceedings did not constitute a waiver of his right to challenge the enforceability of the arbitration clause." With respect to DAI's first motion, however, the court did not explain why it denied the stay, nor did it make any findings of fact or conclusions of law regarding the arbitration clause.
 
 
 54
 Johnson argues that the North Carolina court must have relied on one of the rationales offered by Johnson (lack of mutuality or fraudulent inducement) even though the court did not specify which one. In North Carolina, however, collateral estoppel only precludes the relitigation of issues that were actually and necessarily decided in the earlier action. King v. Grindstaff, 284 N.C. 348, 200 S.E.2d 799, 805 (1973). The party invoking the benefit of collateral estoppel (here, Johnson) bears the burden of establishing what was in fact determined by the prior judgment. Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552, 557 (1986). Even if one of the issues raised by Johnson--mutuality or fraudulent inducement--was necessarily decided by the state judge, it is impossible to ascertain which issue was actually decided. We therefore hold that the judgment of the Gaston County court would not be accorded preclusive effect under North Carolina law with respect to the validity of the arbitration clause.
 
 
 55
 Accordingly, we affirm the district court's decision not to accord full faith and credit to the judgment against DAI obtained by Johnson in the North Carolina court.[9]
 
 
 56
 C. The Franchisees' Challenges to the Arbitration Clause
 
 1. Mutuality
 
 57
 The franchisees argue that the arbitration clause is void for lack of mutuality, in that it requires a franchisee to submit all controversies to arbitration but reserves to DAI (through its leasing companies) the right to seek summary eviction against the franchisees. The district court rejected this argument, finding no lack of mutuality: If the leasing companies were separable entities, then "the arbitration clause will be enforceable only as to DAI and the [franchisees], obliging them to arbitrate, thus establishing mutuality." If, on the other hand, the leasing companies were indistinguishable from DAI, then they too would be bound to arbitrate. Either way, the court reasoned, mutuality was not an issue.
 
 
 58
 We agree that mutuality is not an issue, but for different reasons. Preliminarily, we note that the parties have not offered any reason why we should not apply the choice-of-law clause in the franchise agreements, which indicates that Connecticut law applies. Connecticut courts, however, have not addressed the precise question whether an arbitration clause may be void for "lack of mutuality."
 
 
 59
 The term "mutuality" can refer to several different concepts in contract law. Although it is unclear whether the franchisees are referring to "mutuality of obligation" or "mutuality of remedy," both doctrines are largely dead letters. The doctrine of "mutuality of obligation" requires a valid contract to be based on an exchange of reciprocal promises. 1A ARTHUR L. CORBIN, CORBIN ON CONTRACTS Sec. 152, at 3 (1963). As applied to arbitration clauses, that rule has been restated to mean that "the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate." Hull v. Norcom, Inc., 750 F.2d 1547, 1550 (11th Cir.1985) (interpreting New York law). But "mutuality of obligation" has been largely rejected as a general principle in contract law, as well as in the arbitration context. The latest Restatement of Contracts provides that "[i]f the requirement of consideration is met, there is no additional requirement of ... 'mutuality of obligation.' " RESTATEMENT (SECOND) OF CONTRACTS Sec. 79 (1979). Option contracts, for example, are unquestionably valid under this modern rule despite their lack of "mutuality of obligation." That is, one party's promise to honor a future offer to purchase an item is valid if supported by the other party's present payment of a sum of money. The promise to accept the offer need not be supported by a reciprocal promise to make that offer. The New York Court of Appeals essentially adopted the Second Restatement position in a case involving a challenge to an arbitration clause which bound only one of the parties to arbitrate. In Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 137, 538 N.Y.S.2d 513, 516, 535 N.E.2d 643, 645 (1989), the court held that
 
 
 60
 [i]f there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement.... Since it is settled that the validity of an arbitration agreement is to be determined by the law applicable to contracts generally ... there is no reason for a different mutuality rule in arbitration cases.
 
 
 61
 Most courts facing this issue have arrived at the same conclusion. See, e.g., Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168 (6th Cir.1989); Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 47 (3d Cir.1978); W.L. Jorden & Co. v. Blythe Indus., 702 F.Supp. 282, 284 (N.D.Ga.1988); Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs., 656 P.2d 1184, 1185 (Alaska 1983) ("As one clause in a larger contract, the [arbitration] clause is binding to the same extent that the contract as a whole is binding."); LaBonte Precision, Inc. v. LPI Indus. Corp., 507 So.2d 1202, 1203 (Fla.Dist.Ct.App.1987); Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 196 N.J.Super. 16, 481 A.2d 553 (1984), aff'd for reasons stated below, 98 N.J. 266, 486 A.2d 334 (1985). Contra Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Management, Inc., 165 Ariz. 25, 795 P.2d 1308, 1313 (Ct.App.1990); R.W. Roberts Constr. Co. v. St. Johns River Water Management Dist., 423 So.2d 630, 633 (Fla.Dist.Ct.App.1982).
 
 
 62
 It has been argued that, according to the Supreme Court's decision in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967), an arbitration clause is separable from its underlying contract, and therefore must be supported by separate consideration. Stevens, 795 P.2d at 1312-13. In Prima Paint, the Court held that a claim of fraud in the inducement of an underlying contract must be left to the arbitrators, but that a claim of fraud in the inducement of the arbitration clause should be decided by the court. Prima Paint, 388 U.S. at 403-04, 87 S.Ct. at 1805-06. In reaching this conclusion, the Court endorsed the result reached by our court in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir.1959) (Medina, J.), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, cert. dismissed for mootness, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).[10] In Robert Lawrence, we described the FAA as distinguishing between "the entire contract between the parties on the one hand and the arbitration clause of the contract on the other," 271 F.2d at 409--the latter being described as a "separable part of the contract." Id. at 410. At one point in Robert Lawrence, we speculated that
 
 
 63
 we would suppose that generally where the arbitration provision of the contract is sufficiently broad to encompass the issue of fraud, the mutual promises to arbitrate would form the quid pro quo of one another and constitute a separable and enforceable part of the agreement. We do not decide this point, however, as it is not necessarily before us.
 
 
 64
 Id. at 411. This passage, one might argue, indicates that an arbitration clause must be treated as a contract supported by independent consideration. For the following reasons, however, we reject this characterization.
 
 
 65
 First, of course, we clearly labelled our statement in Robert Lawrence as dicta. Second, though we suggested that mutual promises to arbitrate could constitute sufficient consideration to support an arbitration agreement, we did not exclude the possibility that other consideration could support the agreement. Third, we indicated only that arbitration clauses are "separable" from void or voidable provisions of a contract--not that they are independent contracts. Although we consider an arbitration clause separately for the limited purpose of evaluating a claim of fraudulent inducement, we do not do so for all purposes. For example, when determining the parties' intent in the arbitration clause, we must read the contract as a whole. Mastrobuono v. Shearson Lehman Hutton, Inc., --- U.S. ----, ----, 115 S.Ct. 1212, 1217, 131 L.Ed.2d 76 (1995) (quoting RESTATEMENT (SECOND) OF CONTRACTS. Sec. 202(2) (1979)). State law generally governs the determination of whether the parties agreed to arbitrate a certain matter, First Options of Chicago, Inc. v. Kaplan, --- U.S. ----, ----, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995), and Connecticut courts "construe the contract as a whole" and consider "all relevant provisions ... when determining the intent of the parties." White v. Kampner, 229 Conn. 465, 641 A.2d 1381, 1385 (1994).
 
 
 66
 Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 169 (6th Cir.1989), rejected the contention that under Prima Paint, "an arbitration clause is an independent contract that is separable from the main contract in which it is found and therefore must have all of the essential elements of a contract, including consideration." As the Wilson court pointed out, more recent decisions of the Supreme Court have consistently emphasized that the FAA is grounded in a strong federal policy favoring arbitration. Id. at 169. A doctrine that required separate consideration for arbitration clauses might risk running afoul of that policy. In any event, because the franchisees make no claim that the underlying contract was the result of fraud, we have no occasion to consider the arbitration clause in isolation from the larger contract. Accordingly, we need not decide whether the arbitration clause must be supported by independent consideration.
 
 
 67
 The doctrine of "mutuality of remedy" affords no greater relief for the franchisees. That rule, which provides generally that a "plaintiff shall not get specific enforcement unless the defendant could also have obtained it," 5A ARTHUR L. CORBIN, CORBIN ON CONTRACTS Sec. 1181, at 336 (1964), is also defunct. See, e.g., Sablosky, 73 N.Y.2d at 137, 538 N.Y.S.2d 513, 535 N.E.2d 643 ("Mutuality of remedy is not required in arbitration contracts."). As explained in the latest Restatement,
 
 
 68
 the law does not require that the parties have similar remedies in case of breach, and the fact that specific performance or an injunction is not available to one party is not a sufficient reason for refusing it to the other party. The rationale of the supposed requirement of "mutuality of remedy" is to make sure that the party in breach will not be compelled to perform without being assured that he will receive any remaining part of the agreed exchange from the injured party. It is therefore enough if adequate security can be furnished.
 
 
 69
 RESTATEMENT (SECOND) OF CONTRACTS Sec. 363 cmt. c (1979).
 
 
 70
 In view of Connecticut's strong policies favoring arbitration, see, e.g., White v. Kampner, 229 Conn. 465, 471, 641 A.2d 1381, 1384 (1994); Garrity v. McCaskey, 223 Conn. 1, 7, 612 A.2d 742, 746 (1992), we believe that the Connecticut courts would conclude that "where the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well." W.L. Jorden & Co., 702 F.Supp. at 284. The franchisees do not contest that the franchise agreement as a whole is supported by consideration. Absent a failure of consideration, in this instance, we cannot invalidate the agreement in whole or in part.
 
 2. Waiver of Right to Pursue Arbitration
 
 71
 The district court held that regardless of whether the leasing companies were DAI's alter egos, DAI had not waived its right to compel arbitration under the franchise agreement. On the one hand, if the leasing companies were not DAI's alter egos, then their pursuit of eviction proceedings against the franchisees could not be imputed to DAI. On the other hand, even if the leasing companies were DAI's alter egos, DAI nevertheless invoked its arbitration rights as soon as it was named a party in the various state court actions commenced by the franchisees. Somewhat opaquely, the court held that DAI "cannot be held to have waived a right of arbitration by an after-the-fact holding that it is the alter ego of the leasing companies." We disagree.
 
 
 72
 There is no authority to support the notion that a party is liable for acts of its alter ego only if a court has previously found that an alter-ego relationship exists. As we have explained in the context of contractual liability, "it is clear that the consequence of applying the alter ego doctrine is that the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and ... the acts of one are the acts of all." Fisser v. International Bank, 282 F.2d 231, 234 (2d Cir.1960) (holding parent corporation bound to arbitrate, where its alter-ego instrumentality signed arbitration agreement); see also Interocean Shipping Co. v. National Shipping & Trading Corp., 523 F.2d 527, 539 (2d Cir.1975) (holding that company may be compelled to arbitrate even if not party to agreement containing arbitration clause, where company is alter ego of another party that clearly is subject to arbitration), cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). We believe that this principle applies with equal force in the present context. If DAI and its leasing companies should be treated as one and the same, then the initiation of eviction proceedings by the leasing companies must be imputed to DAI.
 
 
 73
 There remain two further questions: (1) whether the district court or the arbitrators should determine the waiver issue, and (2) what standard should be used by the appropriate decisionmaker. As to the first question, we note that the defense of waiver is generally referable to the arbitrators in cases involving petitions to compel under Sec. 4 of the FAA--with one important exception which we shall shortly explain. In World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir.1965), we squarely held that issues of waiver, like issues of fraud in the inducement of the entire contract, were properly resolved by the arbitrators, not the district court. Id. at 364-65. In reaching this conclusion, we pointed out that Sec. 2 of the FAA makes an arbitration agreement enforceable " 'save upon such grounds as exist at law or in equity for the revocation of any contract.' " Id. at 364 (quoting 9 U.S.C. Sec. 2). Waiver, we explained, does not constitute a ground for "revocation" of a contract within the meaning of Sec. 2, and thus is not a basis for invalidating an arbitration contract. Id. Likewise, we explained that under Sec. 4, a court is required to grant a petition to compel arbitration except where a question of fact exists as to (1) "the making of the arbitration agreement" or (2) the "failure, neglect, or refusal of another [i.e., the respondent to the Sec. 4 petition] to arbitrate." Id. at 364-65 (quoting 9 U.S.C. Sec. 4 (emphasis added)). Because acts by the petitioner constituting waiver of the right to arbitrate did not fall within either of these enumerated categories, a district court cannot refuse to order arbitration under Sec. 4 on a theory of waiver. Id. at 365. We reaffirmed this restrictive interpretation of Sec. 4 in Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 571 (2d Cir.1968), where we held that most questions regarding the defense of laches should be decided "by the arbitrators, not the courts." In that case, we repeated that "[t]he only issues which the court is authorized to consider on a motion to compel arbitration are ones which pertain to 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' " id. at 571, and that the latter phrase referred to the failure of the respondent in a Sec. 4 action to submit to arbitration, id. at 572.
 
 
 74
 Our decision in World Brilliance did not call into question, however, a parallel line of cases that considers waiver to be an equitable defense to a stay application under Sec. 3 of the FAA, which a court is empowered to consider. Section 3 authorizes a court to stay proceedings pending arbitration, "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. Sec. 3. For example, in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir.1942), a defendant sought to amend his answer nine months into the litigation and two months before trial, raising for the first time the defense that the case was arbitrable. Id. at 986. We construed the defendant's motion to amend as an application for a Sec. 3 stay of proceedings. Id. at 986 n. 29. We explained that the proviso in Sec. 3--that a stay shall be granted "providing the applicant for the stay is not in default in proceeding with such arbitration"--referred to a party "who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." Id. at 989. We also noted with approval that, in other courts,
 
 
 75
 [a] plaintiff who brought suit on a contract, without seeking to avail himself of its arbitration clause, has been held to have waived his rights thereunder, so that he could not subsequently, after a long delay, ask the court, under Section 3, to stay the action pending arbitration.
 
 
 76
 Id. We also indicated our agreement with a Fourth Circuit decision finding waiver of the right to arbitrate by a counterclaim defendant who participated at length in litigation, but on the eve of trial moved for a stay under Sec. 3 of the FAA. Id. (describing Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318 (4th Cir.1938)). The defendant in Kulukundis did not waive its right to arbitrate, we held, because it had not pursued litigation as extensively as had the parties in these other cases. 126 F.2d at 989.
 
 
 77
 We again equated a waiver of the right to arbitrate with a "default in proceeding with such arbitration" under Sec. 3 in Robert Lawrence, 271 F.2d at 412; see Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968) (deciding waiver issue where defendant moved for stay). The Court of Appeals for the District of Columbia Circuit apparently took the same view, when it explained that
 
 
 78
 [t]he right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right. Once having waived the right to arbitrate, that party is necessarily "in default in proceeding with such arbitration."
 
 
 79
 Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C.Cir.1966) (per curiam).
 
 
 80
 Yet some of our cases have also recognized that a court may consider a waiver defense to Sec. 4 actions to compel arbitration as well as to Sec. 3 stay applications--seemingly in derogation of our holding in World Brilliance. For example, in Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291, 293-94 (2d Cir.1965), the petitioner had filed a complaint alleging breach of a contract but then filed a Sec. 4 petition and moved to dismiss the first complaint, before the defendant had even filed an answer. We rejected the respondent's defense of waiver on the merits, even though World Brilliance had been decided only seven months earlier. In Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009, 1017 (2d Cir.1972), where a defendant in a contract action pleaded arbitration "as an affirmative defense" after trial had been completed, we did not construe it as seeking either a Sec. 3 stay or a Sec. 4 order compelling arbitration. We held that the defendant's failure to raise the arbitration issue until after filing cross-claims, participating in discovery, and going to trial on the merits constituted waiver of its right to arbitrate. Id. The court did not discuss its authority for reaching the waiver issue--possibly because the defendant had neither sought a stay under Sec. 3, nor petitioned the court to compel arbitration under Sec. 4. Id. Yet in all of the cases cited in Demsey, except Chatham, the court decided the waiver issue only where a defendant, deep into the litigation, sought a stay of judicial proceedings under Sec. 3 of the FAA. Id. at 1017-18.[11]
 
 
 81
 Any distinction between Sec. 3 and Sec. 4 actions--never fully explicated--submerged even more deeply by the time this court decided Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). That case involved a defendant who, only after obtaining an adverse ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, sought both a Sec. 3 stay and a Sec. 4 order compelling arbitration. 754 F.2d at 459. Citing Demsey, we stated that "[t]he rule of this circuit ... is that the litigation of substantial issues going to the merits may constitute a waiver of arbitration," id. at 461, and proceeded to decide the waiver issue. Shortly thereafter, we faced a similar case involving a defendant who sought to sever certain claims from ongoing litigation and petitioned the court to compel arbitration of those claims under Sec. 4 of the FAA. Rush v. Oppenheimer & Co., 779 F.2d 885, 886 (2d Cir.1985). We made it clear that "waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated," id. at 887, and again decided the waiver issue. Finally, in Kramer v. Hammond, 943 F.2d 176 (2d Cir.1991), we held that a party bringing a petition to compel under Sec. 4 had waived his right to arbitration by engaging in prior litigation in state courts, not in the district court.[12] Id. at 180. Again, the parties did not raise and we did not discuss why this issue was for the courts rather than the arbitrators to resolve.
 
 
 82
 It would appear that the waiver defense has slowly been transformed from a statutorily mandated inquiry in Sec. 3 cases--whether the "applicant for the stay is ... in default in proceeding with such arbitration"--into a broader equitable defense in Sec. 4 cases. This trend has its limits, however, and another of our decisions suggests how the equitable waiver defense may be reconciled with our holdings in World Brilliance. In Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59 (2d Cir.1983), we reaffirmed the holdings of World Brilliance and Trafalgar that a waiver defense, like a laches defense, was "an arbitrable issue." Id. at 67. We noted that in the cases where the court itself decided the issue of waiver, the "party had previously participated in court proceedings to litigate the same dispute." Id. at 67 n. 8. We therefore distinguished between cases where the waiver defense was based on prior litigation by the party seeking arbitration--when the court should decide the issue of waiver--and those when the defense was based on other actions. It may be that the modern evolution of our waiver doctrine does not correspond precisely to our understanding of the FAA thirty years ago. Yet we are bound to abide by our most recent precedent. Cf. Commodity Futures Trading Commission v. Dunn, 58 F.3d 50, 54 (2d Cir.1995) (holding that a panel of Court of Appeals may not "disregard the reasoning of a decision [of a prior panel] because an entirely different line of reasoning was available").
 
 
 83
 Clearly, the present case falls squarely within the parameters of Kramer v. Hammond, where the party invoking arbitration (DAI) was allegedly involved in prior litigation in state courts. Pursuant to the distinction we drew in Prudential Lines, and consistent with Kramer, we hold that the issue of DAI's waiver of arbitration is for the district court to resolve on remand.[13] The factual contentions to be resolved include whether the leasing companies were mere alter egos of DAI. If DAI was responsible for the eviction proceedings, it must then be determined whether prosecution of those eviction actions constituted litigation of "substantial issues going to the merits." Sweater Bee, 754 F.2d at 461. This inquiry will require a determination of whether, in fact, the particular eviction proceedings were based on the cross-default provisions of the subleases. If the alleged violations of the subleases were premised on violations of the franchise agreement (which DAI was contractually bound to resolve through arbitration) then DAI did litigate substantial issues going to the merits, and the only remaining question will be whether the franchisees suffered prejudice from the eviction proceedings. See, e.g., Cotton v. Slone, 4 F.3d 176 (2d Cir.1993) (finding prejudice where defendant failed to pursue interlocutory appeal from denial of motion to compel, and instead fully litigated arbitrable issues on the merits in the district court); Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576-77 (2d Cir.1991) (finding prejudice where defendant's extensive litigation before raising issue of arbitration forced plaintiffs to litigate arbitrable claims, and caused considerable expense and delay).
 
 
 84
 Accordingly, we reverse the district court's order rejecting the franchisees' waiver argument, and remand for further proceedings.
 
 3. Fraudulent Misrepresentation
 
 85
 The franchisees argue that DAI fraudulently misrepresented to them that arbitration was a condition precedent to the institution of legal action by either party to the franchise agreement. They argue that DAI had, in reality, reserved the right to bring summary eviction actions against the franchisees through its leasing companies. The franchisees also claim that DAI failed to disclose that it had a custom and practice of bringing summary eviction proceedings and other legal proceedings for alleged violations of the franchise agreement. The district court held that these allegations would be pertinent only if the leasing companies[14] were indeed DAI's alter egos. Both the alter-ego and fraudulent-inducement issues, the court concluded, should properly be left to the arbitrators. This was error.
 
 
 86
 In Prima Paint, 388 U.S. at 403-04, 87 S.Ct. at 1805-06, the Supreme Court stated that "if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it." See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (citing Prima Paint for the proposition that "an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). As this court has explained, if the "arbitration clause was induced by fraud, there can be no arbitration; and if the party charging this fraud shows there is substance to his charge, there must be a judicial trial of that question before a stay can issue." Robert Lawrence, 271 F.2d at 411.
 
 
 87
 The franchisees allege that they were fraudulently induced to assent to the arbitration clause--not to the rest of the contract. Accordingly, under Prima Paint, the district court had to reach the fraudulent inducement issue before deciding whether to compel arbitration. Resolution of the fraud issue, in turn, will require an answer to the antecedent question of whether the leasing companies were DAI's alter egos.
 
 
 88
 We therefore reverse the district court's determination that the arbitrators rather than the court should decide the alter-ego and fraudulent-inducement questions.[15] On remand, the district court must resolve these issues.III. CONCLUSION
 
 To summarize:[16]
 
 89
 1. We affirm the district court's decision that it had subject matter jurisdiction over all of DAI's petitions to compel arbitration, because there was complete diversity between the parties to the arbitration clause.
 
 
 90
 2. We reverse the district court's holding that the Alabama court's judgment in the McCrary case (Case # 8) was not entitled to full faith and credit. That judgment had preclusive effect under Alabama law, and thus barred DAI from seeking to enforce its arbitration agreement with McCrary. We therefore reverse the district court's denial of franchisee McCrary's motion to dismiss DAI's motion to compel and its order granting DAI's petition to compel McCrary to arbitrate. In the exercise of our pendent appellate jurisdiction, we vacate the preliminary injunction barring McCrary from pursuing his Alabama state court claims against DAI. We direct the district court, on remand, to dismiss with prejudice DAI's motion to compel McCrary to arbitrate.
 
 
 91
 3. We affirm the district court's holding that the Illinois courts' judgments in Cases 1-6, 15-16, and DAI v. Bickel were still subject to appeal, and thus under Illinois law were not entitled to preclusive effect. We therefore affirm the district court's denial of those franchisees' motions to dismiss.
 
 
 92
 4. We affirm the district court's holding that the North Carolina judgment in the Johnson case (Case # 7) was not entitled to full faith and credit. That judgment would not be accorded preclusive effect under North Carolina law, because the court's written order does not indicate what issues were actually decided. We therefore affirm the district court's denial of the Johnson franchisees' motion to dismiss.
 
 
 93
 5. We affirm the district court's holding that "mutuality" was not at issue, but on different grounds. We hold that where consideration supports a contract as a whole, an arbitration clause in that contract is not void for lack of consideration.
 
 
 94
 6. We reverse the district court's holding that DAI did not waive its right to petition to compel arbitration, and remand for further proceedings. We hold that if the leasing companies were mere alter egos of DAI, their pursuit of eviction proceedings based on violations of the franchise agreements could constitute waiver of DAI's right to demand arbitration.
 
 
 95
 7. We reverse the district court's decision to defer to the arbitrators on the question of whether DAI fraudulently induced the franchisees to enter into the arbitration agreement. On remand, the district court shall decide this issue.
 
 
 96
 8. Because the district court should have decided the alter-ego, waiver and fraudulent-inducement issues, we reverse its order granting DAI's motion to compel arbitration in all cases and remand for further proceedings. We also reverse its entry of preliminary injunctions against all of the franchisees--including, in the exercise of our pendent appellate jurisdiction and in the interests of judicial economy, the Alabama franchisees.
 
 
 97
 9. Finally, because we reverse the district court's orders entering the preliminary injunctions, we need not address the franchisees' contention that those orders violated the Anti-Injunction Act.
 
 
 
 [1]
 DAI and other franchisees have been involved in similar litigation around the country. See, e.g., Kroll v. Doctor's Assocs., Inc., 3 F.3d 1167 (7th Cir.1993); Mosca v. Doctors Assocs., Inc., 852 F.Supp. 152 (E.D.N.Y.1993); Wilson v. Subway Sandwiches Shops, Inc., 823 F.Supp. 194 (S.D.N.Y.1993); In re Sims, 1991 WL 194699, U.S.Dist. LEXIS 13664 (E.D.La.1991); Yates v. Doctor's Assocs., Inc., 193 Ill.App.3d 431, 140 Ill.Dec. 359, 549 N.E.2d 1010 (5th Dist.1990); Cox v. Doctor's Assocs., Inc., 245 Ill.App.3d 186, 184 Ill.Dec. 714, 613 N.E.2d 1306 (5th Dist.), appeal denied, 152 Ill.2d 556, 190 Ill.Dec. 885, 622 N.E.2d 1202 (1993), cert. denied, --- U.S. ----, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994); Casarotto v. Lombardi, 268 Mont. 369, 886 P.2d 931 (1994), vacated and remanded, --- U.S. ----, 115 S.Ct. 2552, 132 L.Ed.2d 807 (1995)
 The relationship between DAI and the Bickels' landlord has also been the subject of litigation. Jannotta v. Subway Sandwich Shops, Inc., 1995 WL 337014, 1995 U.S.Dist. LEXIS 7586 (N.D.Ill.1995).
 
 
 [2]
 For convenience, we shall refer to the franchisees individually according to the following case numbers, or collectively according to the state in which they brought suit, e.g., the "Alabama franchisees." We list the district court docket number, as well as the state of each group of franchisees whose cases were consolidated under the heading of Doctor's Associates, Inc. v. Distajo:
 Case # 1: 3:94-CV-349 Doctor's Associates, Inc. v. Distajo (IL)
 Case # 2: 3:94-CV-511 Doctor's Associates, Inc. v. Brenes (IL)
 Case # 3: 3:94-CV-514 Doctor's Associates, Inc. v. Guerrero (IL)
 Case # 4: 3:94-CV-515 Doctor's Associates, Inc. v. Youmaran (IL)
 Case # 5: 3:94-CV-516 Doctor's Associates, Inc. v. Shino (IL)
 Case # 6: 3:94-CV-517 Doctor's Associates, Inc. v. Loenneke (IL)
 Case # 7: 3:94-CV-803 Doctor's Associates, Inc. v. Johnson (NC)
 Case # 8: 3:94-CV-354 Doctor's Associates, Inc. v. McCrary (AL)
 Case # 9: 3:94-CV-369 Doctor's Associates, Inc. v. Gillon (AL)
 Case # 10: 3:94-CV-370 Doctor's Associates, Inc. v. Smith (AL)
 Case # 11: 3:94-CV-371 Doctor's Associates, Inc. v. Riise (AL)
 Case # 12: 3:94-CV-372 Doctor's Associates, Inc. v. Benton (AL)
 Case # 13: 3:94-CV-948 Doctor's Associates, Inc. v. Kane (MA)
 Case # 14: 3:94-CV-1108 Doctor's Associates, Inc. v. Giannini (PA)
 Case # 15: 3:94-CV-1456 Doctor's Associates, Inc. v. Rothmund (IL)
 Case # 16: 3:94-CV-1457 Doctor's Associates, Inc. v. Papaleo (IL)
 Although DAI v. Bickel was not consolidated with the other sixteen cases before the district court, it was consolidated for purposes of oral argument before this court.
 
 
 [3]
 The arbitration clause provides as follows:
 Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be borne equally by the parties.
 
 
 [4]
 The cross-default provision reads in relevant part as follows:
 If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement ... Sublessor, at its option, may terminate this lease ... and upon such termination, Sublessee shall quit and surrender the leased premises to Sublessor....
 
 
 [5]
 Rule 19(b) provides:
 Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 [6]
 Rule 19(a) provides that
 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
 
 
 [7]
 Cases 1, 2, 3, 4, 5, 6, 15, 16, and DAI v. Bickel. See supra note 2 for the list of franchisees involved in each case listed here
 
 
 [8]
 We note that many of the franchisees' arguments were espoused in a dissenting opinion by a judge on the Illinois Appellate Court, who directly criticized the holding of Ballweg for deviating from the Restatement (Second) of Judgments Sec. 13. Southeastern Ill. Elec. Coop., Inc. v. Illinois Human Rights Comm'n, 162 Ill.App.3d 806, 814, 114 Ill.Dec. 670, 516 N.E.2d 825 (5th Dist.1987) (Karns, J., dissenting), appeal denied, 119 Ill.2d 575, 119 Ill.Dec. 398, 522 N.E.2d 1257 (1988)
 
 
 [9]
 The district court refused to give full faith and credit to the North Carolina judgment on the grounds that it was subject to appeal, and thus did not constitute a final order entitled to preclusive effect. On appeal before this court, DAI concedes and we agree that the North Carolina judgment is a "final" order for the purposes of North Carolina preclusion law. Sims v. Ritter Constr., Inc., 62 N.C.App. 52, 55, 302 S.E.2d 293, 295 (1983) (holding that interlocutory order affecting a substantial right is final and appealable, and entitled to res judicata effect under North Carolina law)
 
 
 [10]
 Prima Paint, 388 U.S. at 400, 87 S.Ct. at 1804 ("We agree [with the result reached in Robert Lawrence ], albeit for somewhat different reasons....")
 
 
 [11]
 Demsey cited the following cases: Carcich v. Rederi A/B Nordie, 389 F.2d 692 (2d Cir.1968) (holding no waiver where defendant moved for Sec. 3 stay after participating in discovery and pretrial conferences); Robert Lawrence, 271 F.2d 402 (holding no waiver where defendant moved for Sec. 3 stay in the answer); Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F.2d 689 (4th Cir.1956) (in what was arguably a Sec. 3 action, finding no waiver and dismissing federal lawsuit because dispute was arbitrable--but not ordering arbitration); Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir.1968) (holding no waiver where defendant moved for Sec. 3 stay eight months after raising arbitrability as a defense in answer); Mason v. Stevensville Golf & Country Club, Inc., 292 F.Supp. 348 (S.D.N.Y.1968) (Pollack, J.) (finding no waiver where defendant sought Sec. 3 stay after failing to object to scheduling of trial)
 
 
 [12]
 Prior to our decision in Kramer, all of the cases in which we reached the issue of waiver involved substantial litigation on the merits in the district court which was asked to grant the Sec. 3 stay, not in other state or federal courts. Our decisions to rule on the waiver issue, rather than to refer the question to the arbitrators, could have been explained as exercises of the federal courts' inherent power to deal with abusive litigation practices in their courtrooms. See, e.g., Chambers v. NASCO, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991) ("A primary aspect of [a court's] discretion [to exercise its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); Link v. Wabash R.R., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."); Landis v. North Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) (holding that the inherent powers of federal courts are those which "are necessary to the exercise of all others"). In Kramer, however, we reached the question of waiver even though the petitioner had not engaged in prior litigation in the district court. Our precedent therefore teaches that a court's ability to reach the question of waiver as a defense to arbitration is not grounded solely in its ability to control litigation practices before it. In light of Kramer, we are bound to hold that a district court may reach the question of waiver whenever a party seeking arbitration has engaged in any prior litigation
 
 
 [13]
 By so holding, we do not purport to reach the question of how the district court should resolve this issue. The defendants' jury demands should be considered by the district court in the first instance
 
 
 [14]
 Although the district court actually referred to the "development agents" as being possible alter egos of DAI, it seems to have meant the "leasing companies." The franchisees do not allege that DAI's various development agents (who engaged in some negotiations on behalf of DAI with the franchisees) were DAI's alter egos
 
 
 [15]
 See supra note 13
 
 
 [16]
 For the list of cases affected by our ruling, see supra note 2