SUMMARY ORDER
Legacy Group of America, Inc. and Samuel M. Ziegel, President of Legacy Group of America, Inc. (Legacy Group of America, Inc. and Ziegel collectively, “Legacy”), appeal the orders of the United States District Court for the Eastern District of New York (Townes, J.), entered on October 6, 2006 and March 31, 2008, granting summary judgment and awarding attorney’s fees and expenses to North American Company for Life and Health Insurance (“North American”).
On October 22, 1993, Ziegel and North American executed an agreement (the “Agreement”), which gave Ziegel the authority to solicit applications for North American insurance policies and place applications with North American, under certain conditions.[1] In exchange, North American agreed to compensate Ziegel with “commissions earned on premiums paid on policies issued by [North American] on applications” Ziegel obtained. Zie-gel agreed to “conduct his activities in a professional manner ... and [comply] with all present and future instructions issued by [North American].” North American retained the right to “refuse to process any application, or issue, or amend any policy.” Under the terms of the Agreement, Ziegel “agree[d] to pay [North *89 American’s] costs and legal expenses if [Ziegel] [was] not the prevailing party in any lawsuit between [Ziegel] and [North American].”
The Agreement could be terminated by either party without cause, providing the terminating party gave thirty-days notice. “If [Ziegel] breachfed] any provision of [the] Agreement which [North American] in [its] sole discretion determine^] to be material” the Agreement automatically terminated for cause. If the Agreement was terminated without cause, North American agreed to “continue to pay [Zie-gel] commissions payable under [the] Agreement ... for the remainder of the first through the tenth policy years.” If the Agreement was terminated for cause, “all further commissions and any other compensation under this ... Agreement shall be immediately and automatically forfeited to [North American].”
In a letter dated June 5, 1998 from North American Senior Vice President Timothy Traynor to Ziegel, North American terminated the Agreement, citing a decline in the amount of North American policies sold and a “poor relationship[ ] ... between [Legacy] ... and [North American’s] home office.” By this time, Legacy had placed approximately 4,000 policies with North American.
In a letter dated June 9, 1998 from Traynor to Ziegel, Traynor reiterated that North American “will be terminating [Legacy’s] contract, due to lack of production, effective thirty (30) days from the date of this letter.” Traynor wrote that North American would return all insurance applications sent by Legacy after that date. Traynor also asked that Legacy repay a loan, called a “Super Bonus advance,” North American made to Legacy in April 1998, which was due to be repaid by January 31, 1999. Traynor expressed concern that because North American was terminating the Agreement the loan would not be repaid “via a year-end Super Bonus payment.” Traynor “recommendfed], as an alternative, that [North American] begin debiting [Legacy’s] first year and renewal commissions at the rate of ... $2,500 per month,” which “would result in full repayment in approximately twelve months.” Traynor wrote that he “would like to hear from [Legacy] if this method of repaying the loan is or is not acceptable.” Traynor concluded that if Legacy attempted “accelerated replacement of the existing block from which the renewals are being generated,” North American would terminate the Agreement for cause and “accelerate[ ] recapture” of the loan. In other words, North American would terminate the Agreement for cause, causing Legacy to lose its residual commission payments, if Legacy attempted to accelerate the replacement of its insurance policies placed with North American that were up for renewal.
After North American terminated the Agreement without cause, North American assigned at least some of Legacy’s policies placed with North American to Graber Agency (“Graber”). As a result of North American’s assignment of Legacy’s policies, Graber obtained medical history and financial information of the policyholders. Graber also began soliciting the policyholders to cancel their original policies and sign new policies, what is known in the insurance industry as “twisting.” In this way, Graber could receive commissions from those new policies and Legacy would no longer receive commissions from the now-terminated original policies.
On August 18, 2003, Legacy brought suit against North American. See Legacy Group of Am., Inc. v. N. Am. Co. for Life and Health Ins., No. 03-CV-4033, 2008 WL 941638, at *1 (E.D.N.Y. Mar. 31, 2008) (hereinafter Legacy). In its initial com *90 plaint, Legacy claimed breach of contract, breach of the covenant of good faith and fair dealings, tortious interference with contractual relationship, and unjust enrichment. The complaint contained several references to North American’s “conversion” of Legacy’s insurance policies and clients, but Legacy’s counsel did not formally allege conversion.
On February 24, 2006, Legacy’s counsel wrote to the district court that “it is clear that [North American] has converted property of [Legacy] by assigning the book of business to the Graber Agency without compensating [Legacy]” and “would like to amend [Legacy’s] complaint to add ... a [conversion] cause of action.” This letter was recorded in the district court docket sheet as a “MOTION to Amend/Correct Complaint.” On February 28, 2006, North American’s counsel wrote to the district court opposing Legacy’s counsel’s request, stating “[a]dmittedly, the plaintiffs were in possession of all the facts necessary to include a claim for conversion in their complaint from the inception of this action.” On March 7, 2006, the district court denied the motion to amend with leave to refile because “[t]his motion cites no law and few facts upon which the Court could base its decision.”
On April 13, 2006, Legacy’s counsel submitted an amended complaint to the district court which included a conversion count. The count stated that after terminating the Agreement, North American “appointed The Graber Agency as the servicing agent” of Legacy’s policies and “notified each of [Legacy’s] customers who had policies of insurance with [North American] that [Legacy was] no longer the servicing agentf ] for their policies but that The Graber Agency had been appointed as their servicing agent.” Legacy stated that by doing this North American converted Legacy’s book of business or Legacy’s list of clients.
The district court treated the filing of the proposed amended complaint with the conversion count as another motion to amend the complaint and denied the motion, stating: “On 3/07/06, this Court denied Plaintiffs letter motion to amend the complaint. Because plaintiff was not granted permission to file an amended complaint, the amended complaint filed on 4/13/06 will not be considered by the Court.”
On September 27, 2006, the district court granted North American’s motion for summary judgment. North American then moved for attorney’s fees and expenses only against Ziegel. Legacy, 2008 WL 941638, at *1. The district court granted the motion, awarding North American $55,106.50 in fees and $6,808.85 in expenses for a total of $61,915.35. Legacy, 2008 WL 941638, at *1.
Legacy appeals.[2] Legacy argues that the district court improperly granted summary judgment for North American on its claims for breach of contract, breach of covenant of good faith and fair dealings, tortious interference with contract and prospective contractual relationship, and unjust enrichment. Legacy also argues that the district court denied it due process in refusing to allow Legacy to amend its complaint to add a claim for conversion and failed to observe its own individual motion practice rule requiring a party to seek a pre-motion conference prior to moving to amend a complaint. Lastly, Legacy claims that attorney’s fees and expenses could not be awarded to North American *91 because these costs were paid by its subsidiary North American Company for Life and Health Insurance of New York (“North American NY”) and North American had failed to sustain its burden of proof. We assume the parties’ familiarity as to the facts, the procedural context, and the issues on appeal.
This Court reviews “a district court’s grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor.” Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir.2005). This Court will affirm the judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 66(c).
Under the terms of the Agreement, North American agreed to pay Ziegel commissions on existing North American policies solicited by Legacy for up to ten years after termination without cause. Legacy does not allege that North American failed to do this, and therefore, there is no genuine issue of material fact with regard to Legacy’s breach of contract action.
Because Legacy conceded its breach of contract claim in the district court and fails to make an argument as to that claim in its brief submitted to this Court, Legacy’s claim of the implied covenant of good faith and fair dealing was properly dismissed by the district court. See Apfel v. Prudential-Bache Securities, Inc., 183 A.D.2d 439, 439, 583 N.Y.S.2d 386 (N.Y.App.Div.1992), modified on other grounds and affirmed, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993); see also Triton Partners LLC v. Prudential Sec., Inc., 301 A.D.2d 411, 752 N.Y.S.2d 870 (N.Y.App.Div.2003); Canstar v. J.A. Jones Constr. Co., 212 A.D.2d 452, 453, 622 N.Y.S.2d 730 (N.Y.App.Div.1995) (“[A] breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract.”). Because Legacy conceded that there was no breach of the agreement, it is unable to claim that there was a breach of the implied covenant of good faith and fair dealing where that claim is based on the same agreement and set of facts as the breach of contract claim.
Legacy’s claims for tortious interference with contract and prospective contractual relations were also properly rejected by the district court because Legacy points to no evidence that North American, in assigning the policies to Graber, “acted solely out of malice, or used dishonest, unfair, or improper means.” Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir.2006) (citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003))
Similarly, Legacy’s claim for unjust enrichment is unsupported by the record. North American was entitled to assign the policies and Legacy had no proprietary interest in the policies beyond receiving commissions. Legacy argues that by assigning the policies to Graber, North American was assigning Legacy’s book of business to which Legacy had a property interest.[3] North American had the right to assign policies to Graber. Whatever information those policies contained was freely assignable as well, provided the assignment comported with agreements between the policyholder and North American. Whatever proprietary right Legacy had in its “book of business” was not relevant to the assignment, and Legacy was not entitled to prevent North American *92 from assigning policies North American owned to protect Legacy’s relationships or customer lists.
Turning to Legacy’s due process claim and the substantive conversion claim that Legacy sought to raise through the attempt to amend its complaint, we conclude that the due process claim is meritless and that the conversion claim, had it been brought, also would have lacked merit. This Court reviews the “determination of a district court to deny a party leave to amend the complaint ... for abuse of discretion.” In re Agent Orange Prod. Liability Litig., 517 F.3d 76, 103 (2d Cir.2008) (internal quotation marks and citation omitted). By individual rule, the district court requires that to make any motion to amend the pleadings, “a pre-motion conference ... must be requested” by letter. Individual Motion Practices, Judge Sandra L. Townes, III.B, available at http://www. nyed.uscourts.gov/pub/rules/SLT-MLR. pdf. However, the individual rules also state that, “[i]n many cases, it will be apparent from the letter requesting a pre-motion conference that such a conference will not be a useful expenditure of the parties’ time, and a motion schedule will be set (or the parties will be directed to set one) without convening a pre-motion conference.” Id.
The district court’s individual motion practice rules permit the district court discretion in denying a pre-motion conference, and Federal Rule of Civil Procedure 15 gives the district court discretion to deny a motion to amend a complaint. The district court did not abuse its discretion in doing either. First, Legacy had two and a half years to seek to amend its complaint and chose not to do so, despite the fact that Legacy’s complaint refers to North American’s “conversion” of its book of business and clients multiple times in its original complaint. Second, “the amendment would have done no more than state an alternative theory for recovery,” Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), and as apparent in the amended complaint, there is no genuine issue of material fact or merit to this alternative theory.
We affirm the district court’s award of attorney’s fees and costs. Legacy’s argument against payment is foreclosed under the Agreement, which provides that Ziegel “agree[s] to pay [North American’s] cost and legal expenses” without establishing as a precondition that North American incur the fee and costs directly. North American claims, and Legacy does not dispute, that North American N.Y. was “involved” with the defense and, as North American’s subsidiary, “paid on behalf of its parent corporation.”[4] The fact that the costs were paid by a subsidiary had no bearing on the enforceability of the Agreement. See Thrift Drug, Inc. v. Universal Prescription Adm’rs, 131 F.3d 95, 97 (2d Cir.1997) (noting that under New York law the actions of the subsidiary are imputed to the parent “where a parent dominates and controls a subsidiary” (internal quotation marks omitted)). The district court did not err in finding that there was sufficient evidence that North American incurred the costs it alleged, and Legacy provides no evidence to the contrary.
Legacy raises various other issues on appeal, failing to provide any argument for some. One such issue is “[w]hether the District Court improperly passed judgment on the quality of the parties’ proofs by trying the factual issues rather than *93 properly determining that issues of fact exist.” We conclude that there is no merit in this or any of the other remaining issues Legacy has raised.
Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.

. Ziegel signed the Agreement as an individual. There is no mention in the Agreement of Legacy Group of America, Inc.

. Legacy had previously appealed the order of the district court granting summary judgment but withdrew its appeal. Legacy, 2008 WL 941638, at *1. This Court acknowledged that the appeal was withdrawn without prejudice. Id.

. Legacy takes the view that its "book of business” included a list of policyholders with whom Legacy had a continued relationship and had generated good will that also included proprietary information.

. We note that this does not present a subject matter jurisdiction problem because North American N.Y. was not a named defendant and not party to the Agreement. See Doctor’s Assocs., Inc. v. Distajo, 66 F.3d 438, 445 (2d Cir.1995).